Randall R. **LEWIS**

v.

The **UNITED STATES.**

No. 173–82C.

United States Claims Court.

Feb. 1, 1983.

---

John A. Everhard, Falls Church, Va., for plaintiff. James W. Mitchell, Falls Church, Va., of counsel.

Beacham O. Brooker, Jr., Washington, D.C., with whom was Asst. Atty. Gen. J. Paul McGrath, Washington, D.C., for defendant. Major Allen W. Rigsby, Jr., Office of the Judge Advocate Gen., U.S. Air Force, Alexandria, Va., of counsel.

## ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### OPINION

WHITE, Senior Judge.

The plaintiff, a former enlisted man in the United States Air Force, who was honorably discharged from the service on October 2, 1964, filed his complaint (formerly denominated a petition) on April 5, 1982. In the prayer, the plaintiff asks in the alternative for a "Captain's pay through a full average career with full appropriate pay at retirement * * *," or "for a career life's work in the amount of Fifteen Thousand Dollars ($15,000.00) per year over a thirty (30) year working life career."

Having considered the matter on the basis of the defendant's motion for summary judgment, the plaintiff's response, and the other papers in the record, the court concludes that the motion for summary judgment should be granted.

### Background Facts

The record does not reflect any controversy between the parties with respect to the basic facts of the case. They are set out in this part of the opinion.

The plaintiff was born on February 17, 1943, in Portland, Oregon. On August 6, 1963, at the age of 20 and after having successfully completed 2 years of college work in a community college, the plaintiff enlisted in the Air Force for a term of 4 years.

After a period of basic training, the plaintiff on October 11, 1963, was assigned to the 3646th Field Maintenance Squadron, Laughlin Air Force Base, Texas, as a machinist. He worked in the base machine shop for several months, but he displayed a lack of interest in the work there and failed to observe proper safety precautions while in the vicinity of machinery in operation. Because of these deficiencies, the plaintiff was transferred from the machine shop.

After leaving the machine shop, the plaintiff was assigned duties of a clerical nature at the base. He worked for a time as a file clerk. Although the filing system was comparatively simple, the plaintiff often put papers away in the wrong places; he gave the impression of being unable to concentrate; and he did not show initiative or a desire to learn the work. The plaintiff also had a clerical-type assignment in the base Records and Reports Branch, where he had the duty of picking up, sorting, and delivering certain documents and data. His performance in this assignment was erratic—sometimes satisfactory and sometimes unsatisfactory. While working on the job assignments referred to in this paragraph, the plaintiff's personal appearance was often unmilitary, involving such things as wearing an unclean uniform, wearing his hat on the back of his head, wearing his hat indoors, failing to shine his shoes, and, on one occasion, reporting for work with part of his shirttail hanging out. In addition, the plaintiff displayed personal mannerisms

on the job that were distracting to his fellow workers. The plaintiff received counseling from his superiors regarding his personal appearance, his job responsibilities, and his actions; and, after such a session, he would improve for a day or two, then would regress to his old habits.

On September 9, 1964, the plaintiff's commanding officer recommended that he be separated from the Air Force under Air Force Regulation (AFR) 39–16, which provided in section A, paragraph 1, that airmen "who have demonstrated characteristics of unsuitability and who cannot be developed to the extent of absorbing military training and becoming satisfactory airmen will be processed for discharge" in accordance with certain procedures prescribed in the regulation.

The evaluation officer who was appointed under AFR 39–16 to consider the plaintiff's case interviewed the plaintiff, explained the discharge action that had been recommended by the plaintiff's commanding officer, and offered to assist the plaintiff in preparing any written rebuttal or statement that the plaintiff might wish to submit. The plaintiff elected not to submit any written response. After reviewing the plaintiff's military record and interviewing supervisory personnel under whom the plaintiff had served, the evaluation officer on September 18, 1964, made a finding that "Airman Lewis is unsuitable for military service because of his instability and lack of a desire to adapt himself to the military environment." The evaluation officer recommended that the plaintiff be honorably discharged from the service.

Pursuant to the evaluation officer's recommendation, the plaintiff was honorably discharged by the Air Force on October 2, 1964, for unsuitability under AFR 39–16.

### The Breach of Agreement Issue

The gravamen of the plaintiff's claim, as set out in the complaint, is that he allegedly enlisted in the Air Force for 4 years on the basis of assurance by the Air Force recruiter that "I would be screened during basic training and be enabled to complete my baccalaureate and take ROTC at a university and if I thereby completed and qualified, would be commissioned a United States Air Force officer"; that he was not screened during basic training in accordance with the agreement; that after basic training he was assigned to duty as a machinist instead of being sent to a university; that the Air Force officers and other personnel under whom he worked were informed immediately, and consistently thereafter, of his "desire to complete university training and serve as a USAF officer"; that no attempt was made by the Air Force to rectify the situation and honor the agreement that the recruiter had made with him; and that the Government was guilty of a breach of contract, thereby "causing me the loss of a right to serve in the Armed Forces of the United States in a suitable capacity for which I voluntarily enlisted * * *, [and] causing me to lose a potential USAF officer career for which I studied and prepared myself in college * * *."

The allegations referred to in the preceding paragraph were apparently the basis for the relief sought by the plaintiff in the complaint, as summarized in the first paragraph of the opinion.

Insofar as the plaintiff's claim is based on a breach of the agreement which the Air Force recruiter allegedly made with him, the complaint was filed too late to be considered by the court on the merits. As previously indicated in the opinion, the alleged agreement between the Air Force recruiter and the plaintiff was made sometime before the plaintiff's enlistment on August 6, 1963; and the breach of the agreement occurred not later than October 2, 1964, when the plaintiff was discharged by the Air Force without having been given the university training, and the opportunity to qualify for a commission through the ROTC, allegedly promised to him. The complaint was not filed until April 5, 1982, or more than 17 years after the alleged agreement was breached. This court's statute of limitations (28 U.S.C. § 2501, as amended by section 139 of the Federal Courts Improvement Act of 1982 (Pub.L.

97–164, 96 Stat. 25, 42)) expressly provides in part that "Every claim of which the United States Claims Court [formerly the Court of Claims] has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues."

█ The timely filing of the necessary pleading by a claimant is jurisdictional (*Kirby v. United States,* 201 Ct.Cl. 527, 539 (1973), *cert. denied,* 417 U.S. 919, 94 S.Ct. 2626, 41 L.Ed.2d 224 (1974)), and the 6-year requirement cannot be waived by the court (*Todd v. United States,* 155 Ct.Cl. 87, 93, 292 F.2d 841, 844 (1961)).

█ Consequently, the complaint must be dismissed insofar as it asserts a claim based on alleged breach of agreement.

### The Disability Issue

The complaint contains in paragraph XII a rather cryptic reference to "The most recent Air Force denial of deserved benefits, dated 4 February 1982," as being "in error * * *." The plaintiff's response to the defendant's motion for summary judgment indicates that paragraph XII of the complaint refers to a decision dated February 4, 1982, by the Air Force Board for the Correction of Military Records (AFBCMR).

The administrative record shows that the plaintiff submitted to the AFBCMR an application asking (*inter alia*) that his military records be corrected to show that he was retired from the Air Force by reason of physical disability, and that he be awarded appropriate compensation.[1] The plaintiff contended before the AFBCMR that, at the time of his discharge from the Air Force, he was suffering from an unfitting condition and should have been processed through appropriate disability channels, instead of being discharged for unsuitability under the provisions of AFR 39–16. The AFBCMR denied the plaintiff's application.

At the time of the plaintiff's discharge in 1964, the release of Air Force personnel because of physical disability was governed by AFM 35–4 (12 Nov. 1963). That manual defined "physical disability" in part as follows:

Any manifest or latent impairment of function *due to disease or injury * * ** which reduces or precludes an individual's actual or presumed ability to engage in gainful or normal activity. * * * The term "physical disability" includes mental disease but not such inherent defects as behavior disorders, personality disorders, and primary mental deficiency. [Emphasis supplied.]

The phrase "unfit because of physical disability" was defined as follows in AFM 35–4:

A member is unfit because of physical disability when he is unable to perform the duties of his office, rank, grade or rating in such a manner as to reasonably fulfill the purpose of his employment on active duty.

In support of his contention before the AFBCMR that, at the time of his discharge from the Air Force, he was suffering from a physical disability that made him unfit for military service, the plaintiff submitted (among other papers) written reports of examinations by two physicians in 1979 and by a third physician in 1980.

One of the examining physicians was Ronald Turco, M.D., a neuropsychiatrist. Dr. Turco's statement was signed on June 28, 1979, and indicates that on June 14, 1979, he examined the plaintiff and reviewed the plaintiff's medical records. Dr. Turco's report of the examination stated in part as follows:

Although not actively psychotic, this man shows a great deal of paranoid ideation and certainly is dysfunctional with respect to employment or social relationship.

1. Probably because of court decisions such as those in *Woodard v. United States,* 167 Ct.Cl. 306 (1964), and *Kingsley v. United States,* 172 Ct.Cl. 549 (1965), the defendant does not question this court's jurisdiction to consider the plaintiff's claim for disability retirement compensation.

*Diagnosis:*
1. Schizoid personality.
2. Paranoid personality.

Another physician who examined the plaintiff was Henry H. Dixon, Jr., M.D., F.A.P.A. Dr. Dixon conducted a psychiatric evaluation of the plaintiff on June 28, 1979. Dr. Dixon's report of the examination stated in part as follows:

> This evaluation reveals that Mr. Lewis is currently suffering from a configuration of emotional and thought disorders, which clearly indicate that he would be likely to have problems in any employment circumstance.

> The degree of his present impairment is such that I view him as totally disabled.

The third examining physician was Kenneth Guy Paltrow, M.D., a psychiatrist, who practices in Portland, Oregon. His statement is dated December 8, 1980, and tells of a psychiatric evaluation of the plaintiff that lasted approximately 1½ hours. Dr. Paltrow's comments extend over approximately 6½ pages. He concluded that the plaintiff was suffering from paranoia, that this condition "came as a result of the stress following the trauma of his experience with the United States Air Force," and that "The prognosis for an individual with paranoia is guarded." Dr. Paltrow's "summary conclusion" stated in part as follows:

> In my opinion, prior to the service, this individual did not have paranoia. What happened in the service represented a significant psychic stressor, with the development of a post traumatic stress disorder, which I believe is paranoia. * * *

It will be noted that none of the three physicians expressed the opinion that the plaintiff, at the time of his discharge from the Air Force on October 2, 1964, was suffering from a "disease or injury" which made him unable to perform the duties of his grade.

Dr. Turco did not find the plaintiff to be suffering from disease or injury even in June 1979, although Dr. Turco was of the opinion that the plaintiff in 1979 had personality disorders which made him "dysfunctional with respect to employment or social relationship."

Dr. Dixon's statement refers only to the plaintiff's condition in 1979, and indicates that he was then suffering from "emotional and thought disorders" which impaired him to the point that he was then totally disabled.

Dr. Paltrow was of the opinion that, at the time of his examination of the plaintiff in 1980, the plaintiff was suffering from mental disease, *i.e.,* paranoia, but it was also Dr. Paltrow's opinion that the paranoia developed "following the trauma" of the plaintiff's experience in the Air Force, and not while the plaintiff was serving in the Air Force. It is true that Dr. Paltrow attributed the subsequent development of the paranoia to the plaintiff's experience in the Air Force. However, this would be pertinent if, and only if, the court had jurisdiction to consider the validity of the alleged breach by the Air Force of an agreement made with the plaintiff at the time of his recruitment, and the consequences of the claimed breach.

In addition to the reports of medical examinations previously mentioned, the AFBCMR had before it information concerning medical examinations of the plaintiff that were made by Air Force physicians in connection with plaintiff's discharge from the service under AFR 39–16. It appears that the first examination was made by a Captain Turner, MC, at the USAF Hospital, Laughlin AFB, Texas, in August 1964. Captain Turner referred the plaintiff to the Psychiatry Clinic at the Wilford Hall USAF Hospital, Lackland AFB, Texas, indicating in a written communication to the Psychiatry Clinic (among other things) that he was concerned about the "possibility of underlying schizophrenia [sic]," and about the "possibility of frontal lobe neoplasm."

The plaintiff was examined later in August 1964 by Colonel Martin D. Giffen, MC, Chairman, Department of Psychiatry, at the Wilford Hall USAF Hospital. Dr. Giffen made a finding (among others) to the effect that the plaintiff "does not have any psychiatric disease or condition which would warrant separation from the service under

the provisions of AFM 35–4." Dr. Giffen's diagnosis was as follows:

000–x42 Schizoid personality, chronic, moderate, manifested by tic-like activity, difficulty in integrating into useful Air Force career, patterns and traits of a follower, and a tendency to isolate himself. Impairment: marked for military duty. LOD:no, EPTS. S–4 profile.

█ It appears, therefore, that the AFBCMR did not have before it any evidentiary material establishing that the plaintiff, at the time of his discharge from the Air Force in 1964, was suffering from "disease or injury" which made him unable to perform the duties of his grade. Accordingly, the AFBCMR did not err in denying the plaintiff's application asking that his military records be corrected to show that he was retired from the Air Force by reason of physical disability.

Moreover, none of the factual allegations in the complaint, if proved, would be sufficient to establish—and the plaintiff's response to the defendant's motion for summary judgment does not refer to the availability of any evidence which, if before the court, would be sufficient to establish—that the plaintiff, at the time of his discharge by the Air Force in 1964, was suffering from "disease or injury" which made him unable to perform the duties of his grade. That being so, it would be pointless for the court to hold a trial on the issue of the plaintiff's entitlement to disability retirement compensation.

### Conclusion

For the reasons stated in the opinion, it is concluded that there is no genuine issue as to any material fact necessary for the disposition of the case, and that the defendant is entitled to a judgment as a matter of law.

The defendant's motion for summary judgment is granted, and the complaint will be dismissed.