James (NMN) PARKER, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 429–82C.

United States Claims Court.

April 28, 1983.

James Parker, pro se.

Robert A. Reutershan, Washington, D.C., with whom was Asst. Atty. Gen. J. Paul McGrath, Washington, D.C., for defendant. LTC Ronald R. Winfrey, Dept. of Navy, Washington, D.C., of counsel.

## OPINION

NETTESHEIM, Judge.

Defendant has filed a motion to dismiss the complaint, which comes before the court opposed by plaintiff proceeding *pro se.*

## FACTS

Recounting the facts of this controversy is hampered by the lack of a complete factual chronology. Certain of plaintiff's medical records from March 1965 to September 1973 have been missing for over nine years, and other personnel records, for a shorter period. The following recapitulation is taken from plaintiff's 27-page petition and exhibits thereto; the exhibits plaintiff appended to his response to defendant's motion to dismiss; a series of exhibits filed by plaintiff incident to oral argument; plaintiff's clarifications during

oral argument; and plaintiff's final submission post argument, which was filed by leave of court. Essentially, these documents consist of excerpts from plaintiff's official medical and personnel records, the record of the administrative incarnation of the claims now before this court, and personal correspondence to plaintiff.

Given that the matter for decision is a motion to dismiss the complaint, all facts in the complaint (as supplemented by plaintiff's subsequent filings) have been considered as well pleaded and have been viewed in the light most favorable to plaintiff.[1]

Plaintiff was a First Class Operational Specialist ("OS1"), who had served on active duty in the United States Navy for more than nine years when he was discharged for convenience of the Government on December 20, 1974. Plaintiff's career began in 1965, and after a period of service plaintiff reenlisted on August 31, 1968, for a term extended to March 5, 1974. On March 6, 1974, he reenlisted for another term ending March 5, 1977, which was foreshortened by his December 1974 discharge. Plaintiff filed his petition with the Court of Claims on August 25, 1982, requesting an expungement of records, a correction of his allegedly voluntary discharge; a release of personally placed restrictions on monies owed him as of the date of his discharge, then in the amount of approximately $6100; and back pay for the unserved portion of his reenlistment.

Beginning in late 1972, or at least by February 1973, plaintiff experienced visual acuity and light sensitivity difficulties which he believed resulted from his assigned duties as a radar technician and air controller. He commenced a reenlistment physical on June 8, 1973, and was examined for opthomological problems. On August 30, 1973, plaintiff was notified that he would be placed on "medical hold" past his enlistment period for further visual examinations and evaluations. In late September 1973, an examining opthomologist informed plaintiff that no medical cause for his eye problem was present, although such had been previously identified, and thereafter his medical records to date were lost.

On November 7, 1973, due to his light sensitivity, which he feared might present questions of safety, plaintiff formally requested a rating conversion from OS1 to Navy Counselor First Class (plaintiff also deemed several other classifications acceptable). Plaintiff was subjected to another reenlistment physical beginning on February 20, 1974, and apparently thereafter his request was denied based on a lack of documentation concerning related skills or experience for the desired ratings, although on March 14, 1974, plaintiff's commanding officer highly recommended his request for a rating conversion. Having been on medical hold for seven months, plaintiff was allowed on March 6, 1974, to reenlist for three years, reserving and reiterating his request for a change of rating. Plaintiff included in his complaint a copy of his letter written on March 6 in connection with his reenlistment, which states in pertinent part:

Because of the circumstances surrounding this sudden change in procedures, [apparently in "ordering" his reenlistment without hearing or exercise of the "right" to review medical documents] I will—effective 0001, 15 March 1974—adhere to the following:

No pay, in any form, shall be accepted until the promised rating change is approved in writing. In refusing this money, I will demonstrate my uncertainties over any further action from BUPERS [Bureau of Personnel] and will deter any

1. Because defendant moved to dismiss the complaint based on both the statute of limitations and the bar of the doctrine of laches, defendant styled its reply as "Defendant's Reply to Plaintiff's Response to Defendant's Motion To Dismiss the Complaint and Motion for Summary Judgment." Defendant explained in a later pleading that the reply brief was also captioned as a motion for summary judgment because materials outside the pleading had been submitted to clarify defendant's position. The court treats defendant's motion solely as one to dismiss in that the defense based on the statute of limitations is determined to be dispositive.

charges of "fraudulent enlistment." Upon the granting of the change in rating, the money credited to my account will be accepted immediately.

Because the Navy viewed the visual problems as unsubstantiated, a medical board was recommended on April 3, 1974; plaintiff reported for hospitalization on April 30, 1974, and was discharged on July 22, 1974, after medical board approval. The purpose of his hospitalization and ultimate evaluation of the medical board are among the items plaintiff seeks to have deleted from his official personnel records. Because plaintiff has already filed a motion to strike references to this subject, the court will not make any more specific identification thereto and refers hereinafter to that subject as "the asserted non-visual condition." Of course, no implication should be elicited that the asserted non-visual condition was medical.[2] In fact, the record indicates that plaintiff suffered no medical problems prior to his discharge, but did experience a visual difficulty—myopia.

The July 17, 1974 medical board, noting that plaintiff's complete health record was lost prior to his admission, reported at length its observations on the asserted non-visual condition and, in essence, found no impediment to plaintiff's resumption of duties as an OS1. Plaintiff requested a hearing, which was denied, and submitted on either June 24 or 28, 1974 (the date on which the document was authored is not clear), a rebuttal prior to issuance of the board's report. An additional rebuttal was submitted by plaintiff on August 21, 1974. Plaintiff then wrote a letter to the Secretary of the Navy ("the Secretary") on September 17, 1974, requesting essentially the same relief as the petition now in this court.

In particular, plaintiff asked the Secretary to direct that the requested change in plaintiff's record be made or that he direct plaintiff's discharge from active duty. The Secretary did not respond to the merits of this "appeal," and his lack of response is one of the continuing procedural violations of which plaintiff complains.[3]

After plaintiff's discharge was effected, he filed on February 7, 1975, a request for correction of records with the Board for Correction of Naval Records ("the BCNR") asking for reinstatement, deletion of medical documentation, and back pay. His request was denied on January 19, 1976, and plaintiff sought reconsideration on March 21, 1976. After a hearing his request was again denied on September 8, 1976. The second denial had been approved by the Secretary on August 30, 1976. Plaintiff filed his petition with the Court of Claims on August 26, 1982.

Defendant responded to the complaint with a motion to dismiss because the petition had been filed more than six years after plaintiff's December 20, 1974 discharge and, therefore, could not survive the bar of the applicable statute of limitations. Federal Courts Improvement Act of 1982, Pub.L. 97–164, § 139(a), 96 Stat. 25, 42 (to be codified at 28 U.S.C. § 2501). Plaintiff opposed arguing that the bar is inapplicable in that "Plaintiff is not only challenging a 'wrongful discharge;' rather, Plaintiff is challenging the documentation, the methodology, and review of the discharge." Plf's Answer to Def's Motion To Dismiss, filed Feb. 14, 1983, at 24. Plaintiff also claims that the Secretary was required to act upon his petition for correction of military records and that the signature of the Secre-

---

**2.** By not identifying the asserted non-visual condition, the court does not intimate that it was of a scandalous nature or was supported based on the documents presented to the court. In the course of oral argument, the court explained to plaintiff that the subject would be addressed nonspecifically; plaintiff pointed out that his objection was only that the asserted non-visual condition had been characterized as the reason for his discharge. Accepting this qualification, the court nonetheless will use its

reference for all purposes. Plaintiff's motion filed March 31, 1983, to strike certain matter in defendant's motion for summary judgment hereby is denied.

**3.** Plaintiff submitted a letter from the Chief of Naval Personnel dated November 19, 1974, in response to his September 17, 1974 letter to the Secretary of the Navy, advising plaintiff that his recourse for correction of records was to the BCNR.

tary's Office and date thereof, August 30, 1976, "denying the request for correction toll the statute of limitations." Plf's Answer at 21.

After defendant replied in its motion for summary judgment, plaintiff moved for a 90-day enlargement of time to afford him additional discovery and "admissions," which he deemed were necessary prior to filing "a cross-motion for trial." A telephone conference call was held on April 11, 1983, to advise plaintiff, in view of defendant's converting its motion to a motion for summary judgment,[4] that he would be afforded an opportunity to make an additional submission before oral argument. However, the court denied the discovery motion on the grounds that plaintiff claimed he possessed the records of his BCNR proceedings, which apparently were the subject of his discovery request, and that the discovery he asked of defendant did not bear on the legal issues put forward by the latter's dispositive motion. Plaintiff filed a supplemental brief on April 20, 1983, accompanied by a "Special Reference Section," consisting principally of excerpts of proceedings before the BCNR. Oral argument was heard on April 22, 1983, after which plaintiff volunteered rebuttal documents and argument, which the court allowed to be filed on April 26, 1983.

## DISCUSSION

■ This court has held that the statute of limitations is jurisdictional, *Gerber v. United States,* 2 Cl.Ct. 311, 315 (Cl.Ct. 1983) (YOCK, J.); *Ellis v. United States,* 1 Cl.Ct. 141 at 143 (1983) (MARGOLIS, J.); *Lewis v. United States,* 1 Cl.Ct. 158 at 160–61 (1983) (WHITE, S.J.). The Court of Claims created binding precedent on point, *Kirby v. United States,* 201 Ct.Cl. 527, 539 (1973), *cert. denied,* 417 U.S. 919, 94 S.Ct. 2626, 41 L.Ed.2d 224 (1974), and held that the statute cannot be waived by the court. *Todd v. United States,* 155 Ct.Cl. 87, 93, 292 F.2d 841, 844 (1961).

■ Plaintiff attempts to avoid the six-year bar by arguing that defendant had no legal right to effect his discharge.[5] Thus, because the discharge is illegal, the limitations period cannot be held to commence on a legal nullity. The defect in this approach is that, if adopted, limitations would bar only lawful actions. In effect, the bar would evaporate. The court would try all claims on their merits to ascertain the legality of the challenged government action before declaring a suit filed out of time. Were it not for the authorities discussed hereinafter that obligate this court to honor the bar of the Claims Court's statute of limitations, the court would be required to reject plaintiff's novel approach on the ground that it renders meaningless the applicable six-year statute. *Keef v. United States,* 185 Ct.Cl. 454 (1968), relied on by plaintiff, does not change this result. It is true that the validity of a discharge was examined on cross-motions for summary judgment in *Keef,* but the court noted that plaintiff's suit was timely filed. 185 Ct.Cl. at 460.

Although throughout these proceedings plaintiff argues that his suit encompasses activities beyond his wrongful discharge, the fact remains that his claim accrued upon discharge. *Ramsey v. United States,* 215 Ct.Cl. 1042, 1043 (1978). Specifically, plaintiff complains that both his military and constitutional rights were breached by actions subsequent to his discharge, including those of the Secretary and the BCNR.

---

4. Reasonable notice of conversion of a motion to dismiss to one for summary judgment must be given in order to allow the opposing party to rebut the motion. *E.g., Newman Oil Co. v. Atlantic Richfield Co.,* 597 F.2d 275, 278 (Temp. Emer.Ct.App.1979); *State of Ohio v. Peterson, Lowry, Rawl, Barber & Ross,* 585 F.2d 454, 457 (10th Cir.1978). Although plaintiff was allowed to make an additional filing, the restyling of the motion to dismiss to one for summary

judgment affected only the laches defense, upon which the court makes no ruling.

5. Defendant's actions depriving plaintiff of a hearing before discharge, refusing to adhere to regulations, coding the discharge as "voluntary" when it was involuntary, and terminating plaintiff's active duty with stigmas attached are said to render the discharge illegal.

Plaintiff's last pre-argument filing singles out the failure of the Secretary to act on plaintiff's September 17, 1974 "appeal." According to plaintiff, because the BCNR acted on his two subsequent similar applications, the lack of response by the Secretary to the earlier request not only contravened applicable Navy procedures, but is an ongoing infraction. Plf's Suppl. Brief, filed Apr. 20, 1974, at 3. Alternatively, plaintiff contends that the operative date for limitations purposes is August 30, 1976, the date the Secretary acted on the second BCNR review. Plf's Answer at 23.

■ The Court of Claims held consistently that applications for correction board relief neither toll nor defer the statute of limitations, because these applications are permissive, not mandatory. *Ramsey v. United States,* 215 Ct.Cl. at 1043, *citing Mathis v. United States,* 183 Ct.Cl. 145, 147–48, 391 F.2d 938, 939 (1968), and *Kirby v. United States,* 201 Ct.Cl. at 531–32; *accord, Monningh v. United States,* 1 Cl. Ct. 427 at 428 (1983) (COLAIANNI, J.) ("It is well settled in wrongful discharge cases that '[p]ost separation remedies such as an appeal to a correction board are "permissive in nature and do not serve to toll the running of the statute of limitations." ' "), *quoting Gilmore v. United States,* 228 Ct.Cl. —— (1981), and *Elizey v. United States,* 219 Ct.Cl. 589, 590 (1979); *Bruno v. United States,* 214 Ct.Cl. 383, 386, 556 F.2d 1104, 1106 (1977).

■ Plaintiff cites several authorities to support his argument that the statute of limitations was tolled; each is inapposite. *Furlong v. United States,* 138 Ct.Cl. 843, 152 F.Supp. 238 (1957), was a disability retirement case and not a wrongful discharge case. The Court of Claims has held in disability retirement cases that "the limitations period does not begin to run until action by the first competent administrative board where it is not the separation from

active duty which wrongs the serviceman, but the arbitrary denial of benefits by the board." *Elizey v. United States,* 219 Ct.Cl. at 590 (citations omitted). Unlike wrongful discharge cases wherein the claim accrues at the time of discharge, in disability pay cases, "no cause of action arises (and the statute of limitations does not run) until a proper board has acted or declined to act." *Friedman v. United States,* 159 Ct.Cl. 1, 13, 310 F.2d 381, 389 (1962) (citations omitted), *cert. denied,* 373 U.S. 932, 83 S.Ct. 1540, 10 L.Ed.2d 691 (1963). Also cited is *Biddle v. United States,* 186 Ct.Cl. 87 (1968), involving a WAC Major who was separated in October 1959, subsequently enlisted as a private in 1960, thereafter was discharged in 1964, and successfully brought suit for back pay for the period between October 1959 and September 1964. Although the case apparently was filed subsequent to October 1965, it was not filed more than six years after plaintiff's discharge. At any rate, the case is silent on the statute of limitations.

■ Plaintiff also argues that no limitations bar precludes consideration of his claims because 10 U.S.C. § 1553 (1976), provides that review of a military discharge case be brought within 15 years.[6] As defendant points out, relief to correct records and terms of discharge is available before the BCNR and Navy Discharge Review Board, respectively. *VanBourg v. Nitze,* 388 F.2d 557, 561, 563 (D.C.Cir.1967). Resort to either of these correction boards, however, is permissive, not mandatory. *Friedman v. United States,* 159 Ct.Cl. at 11–12, 310 F.2d at 387–88.

*Ashe v. McNamara,* 355 F.2d 277 (1st Cir.1965), is not to the contrary. After the BCNR denied a request submitted in 1959 to change his 1948 dishonorable discharge, plaintiff in *Ashe* later sued in district court to compel the Secretary of Defense to change the character of his discharge. The

---

6. 10 U.S.C. § 1553(a) provides in part:

The Secretary concerned shall … establish a board of review, … to review the discharge or dismissal … of any former member of an armed force under the jurisdic-tion of his department … upon the request of the former member …. A motion or request for review must be made within 15 years after the date of the discharge or dismissal.

district court granted summary judgment against plaintiff, and he appealed. The First Circuit reversed holding that plaintiff was entitled to a mandatory injunction directing the secretary to reconsider the correction of plaintiff's discharge record. Thus, *Ashe* was a suit for injunctive relief filed in federal district court and is not governed by the statute of limitations and decisional law on tolling of the statute by mandatory remedies in this court. *Van-Bourg* can be distinguished on the same basis. Furthermore, the Court of Claims made clear in *Friedman* that its six-year statute is dispositive, not the time period within which an appeal may be perfected to an administrative agency. In fact, *Friedman* contemplated the expiration of this court's limitations period prior to the date for seeking correction board review in that case. 159 Ct.Cl. at 27–28, 310 F.2d at 397–98.

■ Finally, plaintiff refers to a "continuing claim," based on his ongoing visual limitation and the presence of withheld pay on his records, which allegedly is not defeated by the statute of limitations. The traditional concept of a continuing claim is discussed in *Friedman v. United States,* 159 Ct.Cl. at 6–7, 310 F.2d at 384–85, and does not include those framed by plaintiff's pleadings.

## CONCLUSION

For the foregoing reasons, defendant's motion is granted, and plaintiff's petition shall be dismissed.

IT IS SO ORDERED.

Costs to the prevailing party.