Ronald BEST, et al., Plaintiffs,

v.

The UNITED STATES, Defendant.

No. 722–85C.

United States Claims Court.

April 28, 1988.

Nancy F. Alley, Altamonte Springs, Fla., for plaintiffs.

David B. Stinson, Washington, D.C., with whom was Asst. Atty. Gen. Richard K. Willard, for defendant.

## ORDER

MOODY R. TIDWELL, III, Judge:

Plaintiffs in this action, aircraft mechanics and other technicians now or formerly employed at a United States Army Reserve Aviation Support Facility, seek review of wage setting practices and procedures, increase in salaries, back pay, and declaratory and mandamus relief. The case is presently before the court on defendant's motion for summary judgment.

## FACTS

### A. *Wage Schedule Procedure*

Prior to 1968, no federal regulatory scheme existed to equalize pay scales of blue collar workers employed by different federal agencies in any given geographical area. As a result, workers in the same trade or occupation working for different agencies received unequal pay, though they lived in the same city or county. Concerned by such disparities, and also concerned by the need to attract and retain qualified employees to the federal sector, President Johnson ordered the Civil Service Commission to devise a system to coor-

dinate more uniform wage scales for federal blue collar prevailing wage employees.

The Civil Service Commission (CSC) organized the Coordinated Federal Wage System. In 1972, Congress codified the major principles of this system into the Federal Wage System. Pub.L. No. 92–392, 86 Stat. 564 (1972) (now codified at 5 U.S.C. §§ 5341–5349, 5550 (1982)). Under the enabling legislation, the wages of federal blue collar employees were designed to be set relative to prevailing rates for comparable work in the private sector within a local wage area. The local private wage rates would be determined by wage surveys taken with the cooperation of local private employers.

The administration of this system required CSC, and later the Office of Personnel Management (OPM), to define the wage areas' boundaries, and to designate the "lead agency" within each. The lead agency, in turn, conducted wage surveys among employers, analyzed the generated data, and ultimately established the wage schedules for federal employees. Full-scale wage surveys are conducted every two years with small scale interim surveys in alternate years. The wage scales produced by the surveys have, since 1978, been subject to congressionally imposed pay-rate increase caps. It is important to note that in each year, these pay caps limit pay increases of prevailing rate employees in the plaintiffs' wage area to amounts less than or equal to pay schedules generated by local wage surveys.

To implement the wage survey process, the lead agency in each wage area designates a host activity, in this case, the Naval Training Center in Orlando, Florida. The host activity creates a local wage survey committee comprised of two representatives designated by the host activity, one of whom chairs the committee, and a third member recommended by the labor organization representing the largest number of prevailing wage employees in the wage area. This local wage survey committee schedules and gives notice of local hearings, at which interested organizations and individuals may appear to present informa-

tion, requests, and recommendations pertaining to the conduct of the survey. The local wage survey committee then prepares a report to the lead agency offering any recommendations it has, including changes in the geographic coverage of the wage area, inclusion of industries in the wage area not included in the standard coverage of the survey, inclusion of specified employers, and the addition of specific jobs into the survey.

The regulations governing the conduct of these wage surveys includes a list of jobs which are required to be included in every survey taken. The regulations also include jobs which may be surveyed on an optional basis when there is significant employment in the occupation, both in local federal employment and in local private establishments, and when wage data for the optional job is considered essential to the wage-fixing process for the area. Most of the plaintiffs in this case are aircraft mechanics, a grade 10 position included on the list of jobs for optional inclusion in the surveys. Aircraft mechanics have been included in plaintiffs' wage area survey each year since 1977.

The lead agency submits the local wage survey committee's report to its own wage committee, also comprised of management and labor representatives, which makes its own recommendations. These are forwarded to the Bureau of Labor Statistics which draws a statistical survey sample, including alternates for any private local employer which declines to be surveyed. In accordance with applicable regulations, all private local employers' cooperation in the conduct of these wage surveys is voluntary. The survey sample then goes back to the local committee, which gathers and reviews the data and reports its findings to the lead agency. The lead agency then compiles the wage pay scales according to regulation guidelines which, among other things, require full explanations for any data excluded from the local committee's recommendations, any data included from outside the scope of the local survey, and any departure from standard statistical practice. The lead agency then issues a wage sched-

ule, subject to congressionally imposed pay caps.

## B. *The Dispute at Bar* [1]

Plaintiffs in this action are twenty-two present and former prevailing wage employees at United States Army Reserve Aviation Support Facility No. 49 in Orlando, Florida. Most are or were aircraft mechanics, and all hold or held aviation related positions requiring technical knowledge. Their complaint alleged that CSC and its successor, OPM, acted arbitrarily or capriciously in establishing the boundaries of the wage area in which they are employed, and in establishing the criteria and methodology for the conduct of the wage survey in that area. Plaintiffs further alleged that the Department of Defense, the lead agency in both the Orlando and adjacent Cocoa Beach/Melbourne wage areas, failed to comply with certain of the criteria and methodology established by CSC and OPM. They alleged that these issues, together with the failure of the local wage survey committee in Orlando to combine the Orlando and Cocoa Beach/Melbourne areas, entitle plaintiffs to request the court to direct defendant to increase their salaries, to require the adjacent wage areas to be combined in future surveys, and to direct the payment of back pay to remove alleged inequities of past practices.

Defendant argued that the plaintiffs' claims are barred by the six-year statute of limitations, that both CSC and OPM properly established both the wage area boundaries and the criteria and methodology employed in conduct of the biannual wage surveys, and that DOD and the local wage survey committee substantially complied with the criteria and methodology established by CSC and OPM.

---

1. Suit was originally brought in this action in the United States District Court for the Middle District of Florida, Orlando Division. Over plaintiffs' objections, defendant moved to dismiss and to transfer plaintiffs' claims to this court under argument that the United States Claims Court had exclusive jurisdiction under 28 U.S.C. § 1346(a)(2) to hear all non-tort claims against the United States for money damages over $10,000. The district court agreed

## DISCUSSION

The case is presently before this court on defendant's motion for summary judgment. Summary judgment is appropriate where there are no issues of material fact in dispute, and the moving party is entitled to judgment as a matter of law. RUSCC 56. In evaluating a motion for summary judgment, any doubt over whether there is a genuine issue of material fact must be resolved in favor of the nonmoving party. *Housing Corp. v. United States*, 199 Ct.Cl. 705, 710, 468 F.2d 922, 924 (1972); *Campbell v. United States*, 2 Cl.Ct. 247, 249 (1983). In addition, the "inferences to be drawn from the ... facts ... must be viewed in the light most favorable to the party opposing the motion" for summary judgment. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)); *Ball v. United States*, 1 Cl.Ct. 180, 183 (1982). The court is of the opinion that there are no genuine issues of material fact in dispute and that the case is properly before the court for disposition on defendant's motion for summary judgment.

## A. *Jurisdiction*

That this court possesses the underlying jurisdiction to hear this case is beyond question. As stated in an earlier Order in this case, *Best v. United States*, 10 Cl.Ct. 213, 216 (1986):

The United States Supreme Court addressed the issue of whether the United States Court of Claims had subject matter jurisdiction over prevailing rate employee suits involving certain federal employees in *Amell v. United States*, 384 U.S. 158, 86 S.Ct. 1384, 16 L.Ed.2d 445

---

and transferred the case. *Best v. United States*, No. 85–877 (M.D.Fla. Dec. 9, 1985). Once before this court, defendant again moved to dismiss on jurisdictional grounds. In a decision which reserved judgment on the merits of the parties' arguments, the court found concurrent jurisdiction with the United States District Court, but retained the case in the interest of fairness and judicial economy. *Best v. United States*, 10 Cl.Ct. 213 (1986).

(1966). The plaintiffs in *Amell* were found to be federal employees whose "compensation shall be fixed and adjusted from time to time as nearly as is consistent with the public interest in accordance with prevailing rates and practices" in the industry. Classification Act of 1949, ch. 782, § 202(8), 63 Stat. 955, U.S.Code Cong.Serv., 81st Cong., 1st Sess. at 2364–65, 2368 (1949) (now codified as 5 U.S.C. § 5348 (1982)). *Amell* held that the United States Court of Claims had jurisdiction over such a pay dispute. The Court stated that interpreting the pay regulation of an executive department 'is typically within the province and expertise of the Court of Claims.' *Amell*, 384 U.S. at 163, 86 S.Ct. at 1387.

### B. *Mandamus and Declaratory Relief*

■ To the extent plaintiffs seek mandamus and declaratory relief, this court is without jurisdiction. The United States district courts have jurisdiction of actions of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty ostensibly owed plaintiff. 28 U.S.C. § 1361 (1982). Likewise, the United States Claims Court does not have declaratory judgment powers. *United States v. King*, 395 U.S. 1, 4, 89 S.Ct. 1501, 1502–03, 23 L.Ed.2d 52 (1969). Therefore, this court may address only those issues relevant to plaintiffs' complaint that might provide a basis for damages in the form of backpay, a damage claim within the court's jurisdiction.

### C. *Statute of Limitations*

Plaintiffs asserted that the government improperly conducted the 1977 wage survey for plaintiffs' wage area and that they are entitled to reimbursement for wage increases not received since that time. Defendant asserted this court's six-year statute of limitations. 28 U.S.C. § 2501. A claim accrues when all events have occurred which would fix liability on the defendant and entitle a plaintiff to relief. *Kirby v. United States*, 201 Ct.Cl. 527, 532 (1973), *cert. denied*, 417 U.S. 919, 94 S.Ct. 2626, 41 L.Ed.2d 224 (1974). Plaintiffs'

claim under the 1977 survey would, as a general rule, have accrued on November 22, 1977, the date on which the challenged survey was completed. In its moving brief to this court, however, defendant noted that plaintiffs failed to file suit on their claim until August 13, 1985, nearly two years after the six-year statute of limitations in this court, 28 U.S.C. § 2501, had expired.

■ The statute of limitations cannot be waived, *Parker v. United States*, 2 Cl.Ct. 399, 402 (1983), and plaintiffs conceded that no circumstances of this case operated to toll its running. Plaintiffs did claim, however, that events directly affecting their rights took place within six years of filing sufficient to make out continuing claims not barred by the limitation. *See Daniels v. United States*, 187 Ct.Cl. 38, 40 n. 1, 407 F.2d 1345, 1346 n. 1 (1969). In its reply brief, defendant recognized the merits of plaintiffs' argument, and withdrew its statute of limitations defense as to events and claims after December 9, 1979, six years before the date the case was transferred to the United States Claims Court. Defendant's brief suggested that the six-year bar should be counted as running from the date of the district court's opinion to transfer, but defendant offered no support for why this should be so. Plaintiffs' case was filed in the district court on August 13, 1985. When transfer is effected to cure want of jurisdiction, the transferee court proceeds as if the case originally had been properly filed and the action is afforded the benefit of the filing date in the transferor court. 28 U.S.C. § 1631 (1982). We therefore recognize the filing date in the original district court action. Both parties agreed, should plaintiffs' substantive claims have merit, that plaintiffs would not be entitled to recover damages prior to the six-year period before the earlier filing. *See Daniels v. United States*, 187 Ct.Cl. 38, 40 n. 1, 407 F.2d 1345, 1346 n. 1; *Kutz v. United States*, 168 Ct.Cl. 68 (1964). The court therefore proceeds to the merits of plaintiffs' claims.

## D. *Scope of Review*

■ To have a court set aside the determinations of federal agencies in prevailing rates disputes, a plaintiff must show that there has been an abuse of discretion, or that such a determination is so arbitrary as to be clearly wrong. *Adams v. United States,* 810 F.2d 1142, 1143–44 (Fed.Cir. 1987) (citing *National Maritime Union v. United States,* 231 Cl.Ct. 59, 75, 682 F.2d 944, 955 (1982)); *Baratt v. United States,* 218 Ct.Cl. 242, 248–49, 585 F.2d 1041, 1045 (1978). Plaintiffs in such cases bear a heavy burden of proof, for the congressional grant of administrative discretion is broad and our scope of review narrow.

## E. *Local Wage Survey Committee Action*

Plaintiffs in the case at bar began by conceding that both CSC and OPM properly established the boundaries of the wage area in which plaintiffs are employed, the Orlando wage area. Plaintiffs also conceded that these agencies properly established the criteria and methodology for the conduct of the Orlando wage survey. These points had been listed among plaintiffs' statement of issues in dispute in their brief. Plaintiffs' admission resolves the matter, at least as far as claims of impropriety by CSC and OPM, in defendant's favor. The court's attention is, therefore, focused on the acts of the local wage survey committee and DOD only.

Plaintiffs' contended that the wage surveys in dispute "included *wage earners without similar technical knowledge or training,*" (emphasis in original), and large portions of plaintiffs' brief were devoted to decrying the statistical inequities of including minimum wage employees in the same survey as more highly skilled labor such as themselves. The majority of the remainder of plaintiffs' brief covered issues involving the activities of the local wage survey committee. Plaintiffs argued that the local wage survey committee failed to include other wage areas, criteria, and factors in the conduct and evaluation of the Orlando wage surveys, to the extent that the local wage survey committee action violated the legislative intent behind the prevailing rates laws. Plaintiffs repeated the inequitable discrepancy between private and agency wages. Plaintiffs pointed to the 1985 Orlando survey results which showed a $4.00 per hour difference between private and public sector employees in plaintiffs' occupations. This discrepancy, plaintiffs argued, proves violation of presidential and legislative intent to create equal pay for equal work.

■ Plaintiffs' argument misconstrues legislative intent. The plain language of the prevailing wage legislation states its purpose is to prevent inter-agency discrepancies in wages among "employees who are working under similar conditions of employment in all agencies within the same local wage areas." 5 U.S.C. § 5341(1). The purpose is not, as plaintiffs suggested, to provide pay equal to that of non-federal employees.[2] The court does not find the undisputed wage differential to be the prima facie evidence of agency misconduct as plaintiffs urged upon this court. The mere existence of the wage difference is not a proper basis to ground allegations of agency misconduct under the prevailing wage provisions.

■ Plaintiffs also argued that certain requests made by their agents at local wage survey committee hearings were improperly and arbitrarily denied. Plaintiffs alleged that in 1977, their agent, Gary Taylor, a Flight Facility Supervisor with the Department of the Air Force, requested that the Orlando wage area be combined with the adjacent Cocoa Beach/Melbourne wage area for survey purposes. The records of that hearing, submitted in the briefs, do not support plaintiffs' allega-

---

**2.** Plaintiffs asserted that supervisor pay was to be equal to that of similarly situated private sector supervisors. The court rejects the assertion. *Compare* H.R.Rep. No. 339, 92d Cong., 1st Sess. 6–7 (1971) (alluding to a possible exception for supervisory personnel) *with* S.Rep. No. 791, 92d Cong., 1st Session (1972), *reprinted in* U.S. Code Cong. & Admin. News 2980, 2982 (treating supervisory personnel the same as all other prevailing rate employees) *and* 5 U.S.C. §§ 5341–5349 (1982) (treating the supervisor equally with the laborer/craftsman).

tions. Defendant disputed Mr. Taylor's status as an agent of the plaintiffs but the report of the 1977 hearing identified Mr. Taylor as having "appeared before the committee representing employees at the USAR facility." It is undisputed that Mr. Taylor works at the same facility as plaintiffs. The court is required to view any inferences which may be drawn from the facts in the light most favorable to the non-moving party. *Housing Corp. v. United States*, 199 Ct.Cl. 705, 710, 468 F.2d 922, 924 (1972); *Campbell v. United States*, 2 Cl.Ct. 247, 249 (1983). In keeping with that standard of review, we conclude that Mr. Taylor was a duly appointed agent of the plaintiffs. Neither party has indicated, however, what effect the purported agency, or lack thereof, would have on the validity of any recommendation presented by Mr. Taylor to the wage committee. Nevertheless, the report of the 1977 hearing indicated that the "[r]elief requested was adjustment of wage rates to reflect the relatively 'high' cost of living in the area. No specific recommendation for change to the wage area nor accompanying rationale for such a change was presented." The undisputed facts establish that Mr. Taylor made no specific recommendation as to a change in the wage area. Even if Mr. Taylor had made the request alleged, plaintiffs have not shown that the committee acted improperly in any way.

■ Other agents of plaintiffs appeared before the wage committee in 1979.[3] Plaintiffs argued that the local wage survey committee failed properly to consider a request to include Martin Marietta Corporation, a local private employer, and commercial aviation carriers also located in the wage area, in the survey. The record indicates, however, that both Martin Marietta and commercial carriers were among participating private employers surveyed during some of the years,[4] although Martin Marietta subsequently declined to participate for several years. Plaintiffs fail to appreciate that the wage committee was not empowered to require any private employer to participate. The wage committee could only request private industry participation and make proper substitution for private employers who declined to participate. Failure to include Martin Marietta wage data was at times without the wage committee's control, and hence not the misconduct plaintiff would suggest.

■ In addition, plaintiffs argued that the wage committee failed to consider the wage depressing effect of a large retiree community on local wage scales. However, the record does not show that any recommendations were made as to how the committee was to address that issue; the record indicates only that the agents "commented" upon it, and that "[t]he committee, while recognizing the depressive effect of the retiree community on local wage scales, had no corrective recommendation on this item." Again, having failed to demonstrate what the committee should have done, or was mandated to do, but did not do, plaintiffs have not shown that the committee's action failed the *Adams* standard.

■ Plaintiffs further argued that the wage committee failed to match jobs between public and private sector employment covered in the surveys. The record indicates that plaintiffs' representatives requested several specialized industries be included in the Orlando survey. The wage committee ultimately determined and explained that these industries could not meet size and employment requirements and that the request would not be included in its report to the lead agency. Plaintiffs have not demonstrated how this conclusion or the discussion leading up to it were clearly wrong or arbitrary.

---

3. Here the purported agency is even less clear than in 1977. The record only indicates that the employees who appeared before the committee were employed at the same facility as plaintiffs, and nothing more. Once again, the court will infer the existence of an agency.

4. It should be noted at this juncture that private employers surveyed under the Federal Wage System must meet specific size requirements in order to provide adequate statistical comparison. The size requirements add a flexibility to the wage system, by allowing growth industries to be included in the survey once firmly established in a geographic area.

Plaintiffs contended that, as they requested, the Orlando and Cocoa Beach wage areas should have been combined. In 1981, the local wage survey committee considered requests to combine the Orlando and Cocoa Beach/Melbourne areas worthy of review, and submitted the suggestion to its technical staff. The 1981 survey report indicates that the staff recommended no change in the wage areas, noting that "Orlando and Cocoa Beach/Melbourne are separate and distinct wage areas, each includes a [standard metropolitan statistical area] as its wage survey area, and each has adequate private industry and data for a valid survey." Again, plaintiffs have merely stated their disdain for the decision and have failed to carry their burden to show why the recommendation was arbitrary or clearly wrong over the explanation and rationale of the wage survey committee.

Plaintiffs also complained that in 1985 the local wage survey committee continued to fail to match many jobs without including Martin Marietta in the survey. Martin Marietta, however, in fact had participated in the 1985 survey. As before, plaintiffs have not demonstrated what action of the committee was so arbitrary, clearly wrong, or an abuse of discretion as to entitle plaintiffs to relief.

The court is left to conclude that where plaintiffs made or could make no showing that the local wage survey committee abused its discretion or acted in an arbitrary manner, plaintiffs' challenges to defendant's actions must fail. *Adams v. United States,* 810 F.2d 1142 (Fed.Cir. 1987).

### F. *Department of Defense Action*

Plaintiffs argued that they do not dispute the propriety of the establishment of the existing wage areas; rather, they claim injury from the failure to change the areas' boundaries as they requested. The source of plaintiffs' request to join the areas is that federal employees of the same wage grade received more money per hour in the Cocoa Beach/Melbourne area than plaintiffs received in Orlando. Plaintiffs noted that only fifty miles separate the areas

geographically. They further argued that, since the statute and regulations permit combination of adjacent areas, the local wage survey committee and the DOD acted arbitrarily in refusing plaintiffs' requests to combine the areas.

While it is true that both the enabling legislation and the attendant regulations allow wage areas to be combined, it is also true that the authorization for such an action is permissive in nature. When the lead agency, here DOD, determines that there are insufficient private sector employees in a certain occupation to conduct an adequate survey, the lead agency may look to the nearest wage area with a sufficient sample. 5 U.S.C. § 5343(d)(2)(B) (1982). The court is of the opinion that the local wage survey committee adequately concluded and explained why the Orlando and Melbourne wage areas were best recognized as separate and distinct wage areas. Plaintiffs have made no showing that either the Orlando or Cocoa Beach/Melbourne areas have or had insufficient private sector employees in positions comparable to plaintiffs' for adequate statistical analysis. Then, too, the regulations promulgated to administer the prevailing rate system do permit adjacent areas to be combined, even when each area meets criteria which would otherwise distinguish it as a separate area. Considerations listed in support of combining otherwise autonomous areas include geographical features of the area, transportation facilities for employees, and commuting patterns for public and private sector employees. OPM, Federal Personnel Manual Supp. 532–1, Federal Wage System, Subchapter S5–4(c) (1984). Aside from plaintiffs' statement of the distance between the wage areas here, "only" fifty miles, as a potential geographic factor, the court can find no mention in plaintiffs' papers of the other listed factors. The court concludes that the defendant properly exercised its permissive discretion within its statutory and regulatory powers.

In the alternative, even if the wage schedules in dispute were defectively less than they should have been, plaintiffs'

claim for backpay cannot be allowed because their wages were governed since 1978 by congressionally imposed pay caps. Though plaintiffs suggested that they should have received more pay, defendant demonstrated quite clearly that prevailing wage employees in plaintiffs' positions have received the maximum pay permitted by Congress—to the extent that one penny more per hour would have exceeded the limitation. Under these facts this court would have to make law instead of interpreting it, which it will not do, by ignoring the express law of the land. Plaintiffs cannot be paid more than Congress permitted from 1977 to 1981. The court will not venture down that mischievous road. *Cf. Daniels v. United States*, 187 Ct.Cl. 38, 42, 407 F.2d 1345 (1969) ("[T]his court will not purport to tell the Secretary of the Navy what salary formula and base he should adopt.").

### CONCLUSION

Plaintiffs asserted that DOD and the local wage survey committee employed criteria and methodology of CSC and OPM which thwarted statutory purposes and constitutional mandates, though in superficial compliance with them. In every material instance, however, plaintiffs have failed to show just where and how defendant has failed to serve the ends of legislative intent. The factors cited by plaintiffs as skewing the survey results, such as by the exclusion of Martin Marietta data and the effects of a large retiree population, were either not pertinent to the issue or were properly considered. Plaintiffs have, in fact, received the maximum possible wage increases permitted by legislative pay caps in every year since they have been imposed.

In short, plaintiffs have failed to demonstrate that the administrative determinations of CSC, OPM, DOD, or the local wage survey committee for the Orlando, Florida area were the result of abuses of discretion, or so arbitrary as to be clearly wrong. *Adams*, 810 F.2d 1142, 1143–44. Plaintiffs have also failed to demonstrate any issue of material fact still in dispute which would prevent this court from finding in favor of

defendant as a matter of law. Accordingly, defendant's motion for summary judgment is granted. The Clerk of the court is directed to enter judgment in favor of defendant. Costs to defendant.

IT IS SO ORDERED.