OPINION

MARGOLIS, Senior Judge.
This case is before the Court on Cross-Motions For Judgment Upon The Administrative Record, defendant’s Motion to Dismiss, and plaintiffs Opposition to Proceedings on Remand. Plaintiff, James G. Sutton, challenges the Army’s March 27, 2002 decision to involuntarily discharge him from active duty status. He requests reinstatement with back pay and allowances, correction of his military records, and removal of all references to the Army’s involuntary discharge action from his records. After careful consideration of the parties’ briefs and oral argument, this Court DENIES plaintiffs motion, GRANTS defendant’s motion for judgment upon the administrative record, GRANTS defendant’s motion to dismiss plaintiffs request to remove an Officer Evaluation Report (OER), and OVERRULES plaintiffs Opposition to Proceedings on Remand.

FACTS

Plaintiff enlisted in the United States Army Reserve on September 17, 1981. On April 5, 2000, after plaintiff had accumulated over 17 years of active service, the Brigade Executive Officer initiated an investigation, under the provisions of Army Regulation (AR) 15-6, into twelve allegations of misconduct against plaintiff. These allegations were based on two alleged acts: (1) that Sutton had an adulterous affair with Ms. Dana Garza, an unmarried female contract employee at his base at Ford Hood, Texas; and (2) that Sutton operated a vending machine business for profit in his work area without authorization. On June 19, 2000, the investigating officer sent a memorandum reporting his findings to the Commander. (Adm.Rec.56). The memo stated that there was sufficient evidence to substantiate eight of the twelve alleged acts of misconduct and recommended that plaintiff be relieved of his company command and that he “receive appropriate disciplinary/administrative action.” (Adm.Rec.59). On December 20, 2000, plaintiff was relieved of his command.
On January 7, 2001, plaintiff received a relief-for-cause OER for the period of September 1, 1999 through December 20, 2000. On January 31, 2001, Major General George Higgins, Commander, III Corps and Fort Hood, Texas -(MG Higgins), notified plaintiff that, based on the investigating officer’s findings, he was considering utilizing proceedings under Article 15 of the Uniform Code of *801 Military Justice (UCMJ) for non-judicial punishment for violation of four separate articles of the UCMJ. Plaintiff did not demand trial by court-martial and requested that his hearing in the Article 15 proceedings be closed. MG Higgins held an Article 15 proceeding on April 12, 2001. At the proceeding Sutton pled as follows:
1) Guilty to the disobedience offense by contacting Ms. Garza between April 4 and April 30, after his commander’s cease and desist order on. April 3. (Article 90, UCMJ, 10 U.S.C. § 890, Willfully Disobeying a Superior Commissioned Officer).
2) Guilty with substitutions and exceptions to making 4 false statements to the AR 15-6 investigating officer regarding contacts with Ms. Garza. (Violation of Article 107, UCMJ, 10 U.S.C. § 907, False Official Statements).
3) Not Guilty to adultery, by wrongfully having sexual intercourse with Ms. Garza on about January 19 and March 23, 2000. (Violation of Article 133, 10 U.S.C. § 933, Conduct Unbecoming an Officer and a Gentleman (Adultery)).
4) Not Guilty to conduct not becoming an officer by wrongfully and dishonorably installing and operating unauthorized vending machines in the work area. (Violation of Article 133, 10 U.S.C. § 933, Conduct Unbecoming an Officer and a Gentleman (Improper Installation/Operation of Vending Machines)).
MG Higgins found Sutton guilty of the first three allegations and not guilty of the fourth allegation. On April 17, 2001, plaintiff elected not to appeal the Article 15. MG Higgins directed that the Article 15 be filed in plaintiff’s performance fiche of his Official Military Personnel File (OMPF) and did not take any further administrative or criminal actions against plaintiff.
On May 15, 2001, after reviewing plaintiffs OMPF, plaintiffs Full Time Support Management Directorate recommended plaintiff for consideration by the Department of the Army Active Duty Board (DAADB)[1] in accordance with AR 600-8-24, Personnel-General: Officer Transfers and Discharges, ¶ 2-31 (July 21, 1995). Plaintiff submitted a statement in rebuttal to the proposed DAADB action, accompanied by a rebuttal packet. After reviewing plaintiffs DAADB file, including his rebuttal packet, the Commander of the Army Reserve Personnel Command directed that plaintiffs case be submitted to the DAADB to determine whether plaintiff should be released from active duty because of “misconduct, moral or professional dereliction of duty.” After reviewing plaintiffs case, the DAADB recommended that plaintiff be released from active duty with an Honorable characterization. Subsequently, the Deputy Assistant Secretary (Army Review Boards) followed the DAADB’s recommendation and released Sutton from active duty with an Honorable characterization of service. Plaintiff was separated from active duty on March 27, 2002. Plaintiff elected not to appeal the DAADB decision and instead filed suit in this Court, seeking judicial review of the Army’s decision to involuntarily separate him from active duty status.

DISCUSSION

In this action, there are four main issues: (1) whether this Court has subject matter jurisdiction over plaintiffs request that the Court order defendant to set aside an OER that defendant claims was not before the DAADB when it considered whether to release Sutton from active duty; (2) whether the DAADB provisions are void because they are inconsistent with the Department of Defense Directive (DODD) governing separation of Reserve Officers from active duty; (3) whether the DAADB process is unconstitutionally vague and arbitrary; and (4) whether the DAADB process violated plaintiffs Fifth Amendment right to due process. Defendant moves for dismissal of plaintiffs first claim, and judgment upon the administrative record for plaintiffs other claims. In response, plaintiff moves for judgment upon the administrative record.

*802
Subject Matter Jurisdiction to Set Aside an Officer Evaluation Report

Plaintiff requests that this Court order defendant to set aside an OER conducted for the period September 1999 to December 2000. In the OER, the rating official recommended that Sutton be separated from the Army Reserve based on the AR 15-6 investigation that was then ensuing. Specifically, the rating official referred to the alleged improper relationship as the reason for his recommending that Sutton be separated from the Army Reserve. Plaintiff claims that DAADB decided to refer Sutton’s case for involuntary release based on the Article 15 punishment and the relief-for-cause OER. Therefore, plaintiff asserts that because the DAADB considered the OER in reaching its decision to involuntarily release Sutton, this Court has jurisdiction to order defendant to set aside the OER under 28 U.S.C. § 1491(a). In response, defendant contends that the DAADB never relied on the disputed OER when considering Sutton’s release, and thus this Court lacks subject matter jurisdiction over plaintiff’s relief request.
The Tucker Act, 28 U.S.C. § 1491, establishes the jurisdiction of this Court and gives the Court jurisdiction over any claim against the United States based on the Constitution, a statute, or a regulation, if the provision relied on contains language mandating recovery of compensation from the government. United States v. Mitchell, 463 U.S. 206, 215-17, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983). When the Court has jurisdiction over a monetary claim, § 1491(a)(2) gives the Court authority to provide equitable relief. This equitable relief is limited to relief which is “an incident of and collateral to” a money judgment. See James v. Caldera, 159 F.3d 573, 580 (Fed.Cir.1998). Thus, “the Court of Federal Claims has no power ‘to grant affirmative non-monetary relief unless it is tied and subordinate to a money judgment.’ ” Id. (quoting Austin v. United States, 206 Ct.Cl. 719, 723 (1975)). The Court may possess subject matter jurisdiction to entertain one request for relief in a complaint, and yet lack subject matter jurisdiction to entertain a different request for relief in the same complaint. See Voge v. United States, 844 F.2d 776, 781 (Fed.Cir.1988).
Although the parties dispute whether the DAADB relied on the disputed OER, the administrative record shows that the DAADB did not have the OER before it at the time it considered Sutton’s case. The Army Council of Review Boards’ notice of referral to the DAADB specifically states that Sutton’s OER for the period September 1999 to December 2000 was rejected by the Evaluations Support Branch due to deficiencies in detail, and was not included in the DAADB consideration folder. (Adm.Rec.13-14). Even if this Court were to find that the DAADB proceedings were unlawful, the relief this Court would grant, either back pay or a hearing, would be independent of the disputed OER. See Voge, 844 F.2d at 781-82 (finding that, while the Claims Court possessed jurisdiction to award additional pay to an officer, it lacked jurisdiction to enter a request to correct certain adverse OERs). Therefore, this Court finds that it lacks subject matter jurisdiction over plaintiff’s request that this Court order defendant to set aside the disputed OER.

The DAADB Provisions are Not Inconsistent with the Department of Defense Directive Governing Separation of Reserve Officers from Active Duty

Plaintiff claims that his release from active duty should be set aside because the DAADB process, which led to his release, conflicts with the standards set forth in Department of Defense Directive (DoDD) 1332.30, Separation of Regular and Reserve Commissioned Officers (March 14,1997), and Department of Defense Instruction (DoDI) 1332.40, which implements DoDD 1332.30. According to plaintiff, DoDI 1332.40 “sets procedures for adversarial ‘show-cause’ Boards of Inquiry” when the military initiates the removal of an officer, Regular or Reserve, from active duty. (PL’s Cross-Mot. at 9). Because the DAADB process does not provide for show-cause Boards of Inquiry, plaintiff concludes that the DAADB process is inconsistent with DoDD 1332.30 and DoDI 1332.40. In response, defendant contends that DoDD 1332.30 and DoDI 1332.40 do not *803 apply to the actions taken against Sutton. Defendant points out that DoDI 1332.40, entitled Separation of Regular and Reserve Commissioned Officers, defines “separation” to include “discharge, retirement, or resignation” but excludes “release” from the definition. Thus, defendant contends that DoDD 1332.30 and DoDI 1332.40 do not apply to releases. Defendant correctly points out that rather than being discharged, Sutton was involuntarily released from active duty pursuant to 10 U.S.C. § 12313 and paragraph 2-31 of Army Reg. 600-8-24. Defendant claims that because Sutton was released rather than discharged, DoDD 1332.30 and DoDI 1332.40 do not apply.
Regardless of whether DoDI 1332.40 applies to an officer who has been involuntarily released, plaintiffs claim lacks merit. Contrary to plaintiffs assertions, DoDI 1332.40 does not provide for a Board of Inquiry whenever a military department seeks to separate an officer. Rather, it states that: “In eases in which the SCA [Show Cause Authority] determines that an honorable or general characterization is appropriate, the SCA may initiate separation action without a Board of Inquiry (subject to such regulation prescribed by the Secretary of the Military Department concerned)...” DoDI 1332.40, E6.1.1. When a Board of Inquiry is not required, the DoDI requires only that the officer be advised in writing of four things: (1) the reason the action was initiated and the character of the discharge recommended, (E6.1.1.1); (2) that the officer may resign, (E6.1.1.2); (3) that the officer may submit a rebuttal or declination statement instead of a resignation, (E6.1.1.3); and (4) that the officer may consult with appointed or retained counsel (E6.1.1.4). The DAADB process provides all of these procedures, and specifically, in this ease, it appears that Sutton was given notice: (1) of the action initiated against him and the character of the discharge recommended; (2) that he could resign; (3) that he could submit a rebuttal statement instead of a resignation; and (4) that he could consult with counsel. Therefore, the Court finds plaintiffs claim, that the DAADB process is inconsistent with DoDD 1332.30 and DoDI 1332.40, lacks merit.

The DAADB Process Is Not Arbitrarily Vague

Plaintiff contends that the DAADB process is “arbitrarily vague” because it does not contain standards to determine when reservists identified for separation should be offered an adversarial hearing. Plaintiff also contends that the DAADB regulation is unconstitutional because it does not contain provisions necessary to satisfy the due process requirements. According to plaintiff, the DAADB process “is a summary guise for imposing stigma without weighing and considering elementary notions of due process and a hearing.” (Pl.’s Cross-Mot. at 4). Plaintiff claims that because the Army’s administration of 10 U.S.C. § 12313 is shared with the other military services, “the Army is not entitled to any expertise deference in its regulatory interpretation” of the procedures. (Pi’s. Cross-Mot. at 3). Accordingly, plaintiff claims that this Court may review the Army’s interpretation of § 12313 de novo.
Because this is a facial challenge to the regulation, plaintiff “must establish that no set of circumstances exists under which the [regulation] would be valid.” United States v. Salerno, 481 U.S. 739, 745,107 S.Ct. 2095, 95 L.Ed.2d 697 (1987). In this case, plaintiff contends that where an officer receives a stigmatizing discharge, the DAADB procedures do not satisfy due process requirements. Defendant, on the other hand, correctly points out that not every officer considered for involuntary Release from Active Duty (REFRAD) by the DAADB will receive a stigmatizing discharge. See e.g., Jones v. United States, 7 Cl.Ct. 673, 681 (1985) (finding no stigma, and thus no right to a hearing, where officer was discharged for the convenience of the government under honorable conditions). When there is no stigmatizing discharge, the Due Process Clause is not implicated, and the DAADB procedures are constitutionally adequate. Therefore, plaintiff cannot establish that no set of circumstances exists under which the regulation would be valid, and his facial challenge must fail.
Further, a regulation is unconstitutionally vague where it contains no standards by which the conduct it intends to prohibit *804 can be ascertained. See White v. Dep’t of Justice, 328 F.3d 1361, 1368 (Fed.Cir.2003). To decide a vagueness challenge, “[the Court] must assess whether it ‘either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application.’ ” United States v. Barnes, 295 F.3d 1354, 1366 (D.C.Cir.2002) (citations omitted). In this ease, AR 600-8-24, 112-31 is a procedural regulation, and does not purport to make any conduct lawful or unlawful. Moreover, the regulation, entitled “Rules for processing involuntary REFRAD by the DAADB,” precisely articulates what procedures apply to an officer subject to a DAADB proceeding. Therefore, plaintiffs contention that the DAADB process is unconstitutionally vague must fail.
Finally, plaintiffs assertion that Chevron deference need not be accorded here is misguided. See Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). A well-established body of case law illustrates that the standard of review applicable to claims for military back pay is one of deference to the military agency. See e.g., Wronke v. Marsh, 787 F.2d 1569, 1576 (Fed. Cir.1986); Small v. United States, 158 F.3d 576, 581 (Fed.Cir.1998). Further, the cases cited by Sutton, where various courts refused to apply the Chevron rule of deferring to an agency’s interpretation of a statute, are distinguishable from the present case. In those cases, the courts were concerned about situations in which two or more agencies are delegated authority to interpret a statute, yet the agencies assert conflicting interpretations. See e.g. Salleh v. Christopher, 85 F.3d 689, 691-92 (D.C.Cir.1996); see also Rapaport v. United States Dept, of Treasury, Office of Thrift Supervision, 59 F.3d 212, 216-17 (D.C.Cir.1995). Here, there is no inconsistency between the Army’s interpretation of § 12313 and that of another military branch. Further, following Small v. United States, this Court may defer to one branch’s interpretation of a statute that applies to all branches of the military. 158 F.3d at 580-81. The language in § 12313 that “the Secretary concerned may at any time release a Reserve” confers plenary discretion on each individual service secretary to develop whatever procedures he or she deems appropriate.

The DAADB Process Does Not Violate Plaintiffs Fifth Amendment Due Process Right

Plaintiff contends that his liberty interest under the Due Process Clause of the Fifth Amendment was violated by the Army’s failure to provide him with an adversarial hearing prior to his stigmatizing summary release from active duty. Defendant counters that: (1) Sutton’s discharge was not stigmatizing; (2) Sutton cannot challenge the truthfulness of the reasons for the discharge; and (3) Sutton was afforded constitutionally sufficient procedures.
To establish a claim for deprivation of a constitutionally protected liberty interest, a plaintiff must show that without notice and an opportunity to be heard, the military prepared a discharge form which was (1) stigmatizing, (2) false, and (3) published. Lee v. United States, 32 Fed. Cl. 530, 546 n. 17 (1995) (citations omitted). In this case, plaintiff cannot show that the reasons for his discharge were false. Therefore, this Court finds that plaintiff did not have a protected liberty interest for which the Due Process Clause entitled him to a pre-separation hearing.[2]
Due process protects a government employee’s liberty interest in employment when the government publicizes stigmatizing information, which is “based upon an unsupported charge, which could wrongfully injure the reputation of an employee.” Alberico v. United States, 7 Cl.Ct. 165, 169 (1984) (quoting Arnett v. Kennedy, 416 U.S. 134, 157, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974)). The remedy mandated by the Due Process Clause, notice and a hearing, serves to provide a *805 person an opportunity to clear Ms name. See Board of Regents v. Roth, 408 U.S. 564, 573, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Therefore, if the basis for the Government’s action is not disputed, the Due Process Clause is not implicated. See Connecticut Dep’t of Public Safety v. Doe, 538 U.S. 1, 7-8, 123 S.Ct. 1160, 155 L.Ed.2d 98 (2003) (denying a right to a hearing to protect plaintiffs’ liberty mterest m not being stigmatized as a sexual offender when plamtiffs were previously convicted of the underlying sexual crimes that prompted the government’s actions); Dixon v. Love, 431 U.S. 105, 113-14, 97 S.Ct. 1723, 52 L.Ed.2d 172 (1977) (finding that plaintiff did not have a right to a hearing before Ms driver’s license was suspended when the judicial process had already established the violation on which the suspension was based); see also, Codd v. Velger, 429 U.S. 624, 627, 97 S.Ct. 882, 51 L.Ed.2d 92 (1977) (“But if the hearing mandated by the Due Process Clause is to serve any useful purpose, there must be some factual dispute between an employer and a discharged employee which has some significant bearing on an employee’s reputation.”).
In Guerra v. Scruggs, 942 F.2d 270 (4th Cir.1991), the 4th Circuit addressed a due process challenge under circumstances very similar to those of tMs case. Guerra had missed a PT (Physical Training) formation due to alcohol mtoxication, and had also tested positive for cocaine use. Id. at 272. Rather than demanding a trial by court-martial, the plaintiff voluntarily accepted nonjudicial punishment, pursuant to Article 15, for his cocaine use. Id. Subsequently, Guerra received a notice of proposed separation based on the missed meeting due to alcohol intoxication and the cocaine use. Id. Guerra was informed of his procedural rights, which meluded: (1) the right to consult with counsel (either military or civilian); (2) the right to submit written statements on his behalf; and (3) the right to obtain copies of documents that would be sent to the separation authority supporting the proposed separation. Id. In response to the proposed separation notice, Guerra did not deny using cocaine, but rather pleaded that he had paid for his mistakes by the Article 15 punishment. Guerra was subsequently discharged with a general discharge under honorable conditions for cocame usage and absence from duty due to alcohol mtoxication. Id. at 271. Guerra chose not to appeal Ms decision to either the Army Discharge Review Board or the Army Board for Correction of Military Records, and instead sought an injunction in the district court. Among the claims asserted, Guerra challenged the procedures by which he was discharged, claimmg they violated the Due Process Clause. Id.
On appeal, the 4th Circmt first noted that Guerra could have a liberty interest in his good name because it is well known that stigma attaches to a general discharge related to a drug offense. Id. at 278 (citations omitted). The court, however, explained that having a liberty interest m one’s good name is not sufficient to set out a due process claim; one must also prove “the falsity of the government’s asserted basis for the employment decision at issue.” Id. (quoting Doe v. Garrett, 903 F.2d 1455, 1462-63 (11th Cir. 1990)). Turning to the facts, the court found that Guerra could not show that the stated reason for Ms discharge — cocame use — was untrue. Id. at 279. According to the court, Guerra never deMed that he had used cocaine and he voluntarily underwent disciplinary procedures under Article 15 without demanding a court-martial to contest the drug test results. Id. at 278.
In this case, Sutton was mvoluntarily released from active duty pursuant to AR 600-8-24, If 2-31c(2), which provides for the involuntary release of an officer when there is established evidence of a “reason of misconduct or moral or professional dereliction.” AR 600-8-24, para. 2-31c(2); (Adm.Rec.5). The Board explained that Sutton’s performance had been satisfactory until he received an Article 15 for committing adultery, disobeying orders, makrng false statements m an investigation, and for installing and operating unauthorized vendmg machmes m a work area. (Adm.Rec.llB). TMs Article 15 was the Board’s basis for its recommendation that Sutton be mvoluntarily released from active duty. Sutton chose not to appeal the Article 15 decision.
*806 Sutton relies on this Court’s bench opinion in Gonzalez v. United States, No. 97-526C (June 30, 1998), and argues that, similar to the plaintiff in Gonzalez, he disputed the basis for his release from active duty. Specifically, Sutton points out that at his Article 15 proceeding he disputed the adultery charge, the charge of conduct unbecoming an officer, and one allegation of making a false statement to his commander, LTC Fletcher. Subsequently, however, Sutton voluntarily waived his right to appeal his Article 15 and failed to contest the allegations before the DAADB. Further, rather then denying the truthfulness of the charges, Sutton wrote to express his sincere and deepest apology to his family, friends, soldiers, and the U.S. Army for his grave mistakes in judgment. Unlike the plaintiff in Gonzalez, who, in his rebuttal statement to the DAADB maintained his innocence and disputed the charges against him, Sutton did not dispute the factual basis for his Article 15. Rather, Sutton argued that despite these acts of misconduct, the DAADB should not recommend involuntary discharge.
Moreover, at the Article 15 proceeding MG Higgins found plaintiff guilty, beyond a reasonable doubt of three of the four charges brought against him. Plaintiff did not appeal this decision, and in his rebuttal to the DAADB, he did not argue that these findings were incorrect. Based on the administrative record, this Court finds that Sutton cannot demonstrate that the reasons for his discharge were substantially false. See Holley v. United States, 124 F.3d 1462, 1470 (Fed. Cir.1997) (quoting Codd, 429 U.S. at 627, 97 S.Ct. 882)). As the Federal Circuit made clear in Holley, when an officer has received notice of the charges and an opportunity to respond before his discharge is implemented and it is “conceded that the [derogatory] information was not false,” there can be no violation of the Due Process Clause. Id.
Plaintiff also contends that the Army violated Sutton’s procedural due process rights when, after initiation of the DAADB referral process, the Army failed to forward the action to MG Higgins, Sutton’s General Officer Show-Cause Authority (GOSCA). According to plaintiff, had the Army forwarded Sutton’s action to MG Higgins, Higgins would have recommended that the DAADB process not be initiated, or that Sutton’s selection for involuntary release be disapproved by the Secretary of the Army. Therefore, plaintiff asserts that the Army’s failure to forward the action through MG Higgins was prejudicial error. In response, defendant contends that: (1) plaintiff fails to present any evidence that MG Higgins was not notified; (2) the regulations do not require the DAADB to notify the GOSCA; and (3) even if the DAADB erred, the error was not prejudicial.
As defendant correctly points out, plaintiffs contention is based on the faulty premise that AR 600-8-24 requires the DAADB to consider chain of command recommendations when determining whether to release an officer from active duty. The regulation provides, in pertinent part, that: “[w]hen the officer forwards the rebuttal through channels, commanders may review. Documents, comments, or recommendations will not be added.” AR 600-8-24, Table 2-14, Step 3 (emphasis added). Thus, even if the regulation required the action to be forwarded through MG Higgins, any recommendation he might have made would not have been a part of the record before the DAADB when it considered Sutton’s ease. See Christian v. United States, 337 F.3d 1338, 1343 (Fed.Cir. 2003) (quoting Hary v. United States, 223 Ct.Cl. 10, 618 F.2d 704, 707 (1980)) (“To recover back pay ... [a plaintiff must] make a showing that the defect substantially affected the decision to separate him or relieve him from active duty, or at least he must set forth enough material to impel the court to direct a further inquiry into the nexus between the error or injustice and the adverse action.”)

Additional Issue Raised on Remand

Plaintiff claims that the Army violated the Court’s September 27, 2004 amended remand order because it failed to obtain a referral to the DAADB. Specifically, plaintiff contends that the Army improperly limited reconsideration to whether an already convened DAADB would have recommended Sutton’s release on corrected findings of guilt under Article 15 proceedings, rather than considering whether the initiating officer would have *807 to a recommended plaintiffs referral DAADB on the corrected findings. Defendant, on the other hand, contends that returning to the initiating officer was not within the scope of the Court’s order. Defendant claims that the Court never suggested that the Army re-submit plaintiffs packet through the entire process again. Rather, defendant contends that the Court remanded the issue back to the DAADB to have the DAADB clarify its decision due to the factual error in the DAADB process.
This Court remanded the matter to the DAADB for the specific and limited purpose of determining what action the DAADB would have taken against Sutton had it been apprised of the correct results of the Article 15 proceeding. Specifically, the remand directed the DAADB to determine whether Sutton would have been released from active duty had the fourth charge against him been lined out on Form 2627. After complying with the Court’s order to review Sutton’s file, the DAADB determined that its earlier decision to release Sutton from active duty with an Honorable characterization of service was warranted. The Court finds that the defendant complied with the Court’s amended remand order of Sept. 27, 2004.

CONCLUSION

Because plaintiff cannot show that his involuntary discharge violated any statute, regulation, or constitutional provision, this Court DENIES plaintiffs motion for judgment upon the administrative record and GRANTS defendant’s motion for judgment upon the administrative record. Furthermore, defendant’s motion to dismiss plaintiffs request to remove plaintiffs Officer Evaluation Report is GRANTED. Plaintiffs objections to the DAADB’s proceedings on remand are OVERRULED. The Clerk will dismiss the complaint and enter judgment for the defendant. No costs.

. The DAADB determines whether a Reserve Officer’s "manner of performance, degree of efficiency, or misconduct constitutes consideration for involuntary separation." AR 600-8-24, H 2-31c.

. Because the Court finds that Sutton has failed to establish that the reasons for his discharge were false, it is unnecessary for this Court to determine whether Sutton's discharge was stigmatizing, and if Sutton did have a protected liberty interest, whether the DAADB procedures were constitutionally sufficient.