Randal M. **BEVEVINO,** et al., **Plaintiffs,**

v.

The **UNITED STATES,** Defendant.

No. 08–677 C.

United States Court of Federal Claims.

May 21, 2009.

---

399

Judith D. Galat, with whom was Mark D. Roth, Washington, D.C., for plaintiffs.

James P. Connor, United States Department of Justice, with whom were Michael F. Hertz, Acting Assistant Attorney General, Jeanne E. Davidson, Director, Reginald T. Blades, Jr., Assistant Director, Washington, D.C., for defendant.

## OPINION AND ORDER

BUSH, Judge.

Before the court is defendant's motion to dismiss, relying on Rules 12(b)(1) and 12(b)(6) of the Rules of the United States Court of Federal Claims (RCFC). Defendant's motion has been fully briefed, and oral argument was neither requested by the parties nor deemed necessary by the court. For the reasons set forth below, defendant's motion is granted in part and denied in part.

## BACKGROUND[1]

Plaintiffs in this action "are current and former employees of the Federal Bureau of Prisons, Federal Correctional Institution at McKean, Pennsylvania." Compl. ¶ 1. These federal employees claim that they have been paid the wrong wage under the Prevailing Rate System Act, 5 U.S.C. §§ 5341–5349 (2006) (PRSA), and the implementing regulations of the PRSA. *Id.* Plaintiffs seek compensation to redress the alleged underpayment of their salaries for the six year period prior to the filing of their complaint. *Id.* at 6; Pls.' Opp. at 1. The court begins with a brief review of the PRSA.

## I. The Prevailing Rate System Act

The pay for some federal workers is governed by the PRSA. The United States Court of Appeals for the Federal Circuit has provided an overview of this pay system:

> The government's basic pay scale is called the General Schedule (GS). 5 U.S.C. §§ 5104, 5332 (1988). Specifically excluded from GS classifications, 5 U.S.C. § 5102(c)(7), are so-called "prevailing rate employees," defined as workers "employed in or under an agency in a recognized trade or craft ... and any other individual, including a foreman and a supervisor, in *a position having trade, craft, or laboring experience and knowledge as the paramount requirement.*" 5 U.S.C. § 5342(a)(2)(A) (emphasis added). The pay for such workers under the ... "Prevailing Rate" system ... is to be set "so as to attract and retain qualified prevailing rate employees," and is to be periodically adjusted to keep it "in line with prevailing levels for comparable work within a local wage area." 5 U.S.C. § 5341.

*Bosco v. United States,* 931 F.2d 879, 881 (Fed.Cir.1991). It is undisputed that plaintiffs in this case are prevailing rate employees of the federal government.

Periodic comparisons with the wages of non-federal workers doing similar work in a "local wage area" are necessary to establish the correct wages for prevailing rate federal employees working in that local wage area.[2] The policy section of the PRSA clearly reflects these requirements:

> It is the policy of Congress that rates of pay of prevailing rate employees be fixed and adjusted from time to time as nearly as is consistent with the public interest in accordance with prevailing rates and be based on principles that—
>
> (1) there will be equal pay for substantially equal work for all prevailing rate employees who are working under similar conditions of employment in all agencies within the same local wage area;
>
> . . . .
>
> (3) the level of rates of pay will be maintained in line with prevailing levels for comparable work within a local wage area. . . .

5 U.S.C. § 5341.

It is also clear from the statutory provisions of the PRSA that the geographic defini-

---

1. The facts recited herein are taken from the complaint and the parties' briefs and are assumed to be true for the limited purpose of deciding defendant's dispositive motion. The court makes no findings of fact in this opinion. In addition, the court has excluded the appendices attached to the parties' briefs from its consideration, because no information contained in those appendices is relevant to the court's analysis.

2. The term "local wage area," of considerable import to plaintiffs' back pay claim, is defined *infra.* Throughout the United States, local wage areas have been established for prevailing rate federal employees, and pay rates vary from local wage area to local wage area. The Commonwealth of Pennsylvania, for example, has four local wage areas anchored by Pennsylvania cities: Harrisburg, Philadelphia, Pittsburgh and Scranton–Wilkes–Barre. 5 C.F.R. Pt. 532, Subpt. B, App. C (2009).

tion of the pertinent local wage area directly affects the salaries of prevailing rate employees of the federal government. The PRSA provision most directly related to plaintiffs' claim for back pay is 5 U.S.C. § 5343. The United States Office of Personnel Management (OPM) has the specific responsibility of "defin[ing], as appropriate ... the boundaries of ... individual local wage areas for prevailing rate employees...." 5 U.S.C. § 5343(a)(1). OPM also has a general responsibility "by regulation, [to] prescribe practices and procedures for ... administering the prevailing rate system." *Id.* § 5343(c). Thus, it is the actions of OPM that are the focus of a claim that federal employees have been erroneously placed in a particular local wage area, and, as a consequence, have been underpaid under the PRSA.

## II. PRSA Implementing Regulations

In the regulations implementing the PRSA, one can discern the basic scheme OPM has put in place for establishing and adjusting prevailing wage rates. First, a local wage area is defined: *"Wage area* means that geographic area within which a single set of regular wage schedules is applied uniformly by Federal installations to covered occupations." 5 C.F.R. § 532.201 (2009). Second, wage surveys are defined: *"Full-scale survey* means a survey conducted at least every 2 years in which data are collected from a current sampling of establishments in the private sector by personal visit of data collectors[;] *[w]age change survey* means a survey in which rate change data are collected from the same establishments and for the same establishment occupations represented in the full-scale survey." *Id.* Third, a survey area is defined: *"Survey area* means that part of the wage area where the private enterprise establishments included in the wage survey are located." *Id.* If a local wage area includes a county or township where wage surveys are not conducted, that part of the local wage area is referred to as a nonsurvey area. *See* 5 C.F.R. Pt. 532, Subpt. B, App. C (2009) (describing nonsurvey areas as "each county, independent city, or township which, in addition to the survey area, is in the [local wage] area").

The regulation that is most directly implicated in plaintiffs' back pay claim is 5 C.F.R. § 532.211 (2009). A local wage area is further defined by this regulation:

(a) Each wage area shall consist of one or more survey areas along with nonsurvey areas, if any.

(1) *Survey area:* A survey area is composed of the counties, parishes, cities, or townships in which survey data are collected. Except in very unusual circumstances, a wage area that includes a Metropolitan Statistical Area shall have the Metropolitan Statistical Area as the survey area or part of the survey area.

(2) *Nonsurvey area:* Nonsurvey counties, parishes, cities, or townships may be combined with the survey area(s) to form the wage area through consideration of the criteria in paragraph (d)(1) of this section.

5 C.F.R. § 532.211(a)(1)-(2). When combining nonsurvey areas with survey areas to delineate the geographical boundaries of a local wage area, OPM considers the following three factors:

Adjacent economic communities or political units ... may be combined through consideration of:

(i) Distance, transportation facilities, and geographic features;

(ii) Commuting patterns; and

(iii) Similarities in overall population, employment, and the kinds and sizes of private industrial establishments.

5 C.F.R. § 532.211(d)(1). Another section of this regulation states that "[g]enerally, the criteria listed in paragraph (d)(1) of this section are considered in the order listed." *Id.* § 532.211(d)(2).

As a general proposition, the PRSA requires OPM to divide up the geography of this country into discrete local wage areas, most of which are anchored by one or more metropolitan areas. *See* 5 C.F.R. Pt. 532, Subpt. B, App. C ("Wage areas usually carry the title of the principal city in the area."). Most local wage areas also include, in addition to a principal city or cities, less populated counties and/or townships, either in the survey areas, the nonsurvey areas or both.

*See id.* It is possible to imagine, and indeed it is the case in the subject matter, that some federal employees assert that their place of employment has been mistakenly defined to be in one local wage area, when, in fact, it should have been designated as being in a different local wage area, one with higher rates of pay.

### III. Plaintiffs' Workplace in McKean County, Pennsylvania

The county where the plaintiffs in this suit currently work, or worked, is McKean County, Pennsylvania, a nonsurvey area. Compl. ¶¶ 5, 14. Plaintiffs allege that McKean County has been combined with the wrong survey area, and thus, that McKean County has been included in the wrong local wage area for the years at issue in this suit. *Id.* ¶¶ 24, 26. McKean County was, until recently, defined as being within the Pittsburgh local wage area. *Id.* ¶ 22; Def.'s Reply at 17. The Buffalo local wage area has higher prevailing rates than the Pittsburgh wage area. *Id.* ¶ 21. Plaintiffs argue that McKean County should have been included in the Buffalo local wage area, and their back pay claims arise from the "erroneous placement of McKean County, Pennsylvania, in the Pittsburgh, Pennsylvania, wage area rather than the Buffalo, New York, wage area." *Id.* at 6. In January of this year, McKean County was removed from the Pittsburgh wage area and placed in the Buffalo wage area. *See* Def.'s Reply at 17 (citation omitted).

### DISCUSSION

### I. Jurisdiction

■ The Tucker Act delineates this court's jurisdiction. 28 U.S.C. § 1491 (2006). That statute "confers jurisdiction upon the Court of Federal Claims over the specified categories of actions brought against the United States." *Fisher v. United States,* 402 F.3d 1167, 1172 (Fed.Cir.2005) (*en banc*). These include claims " 'founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.' " *Id.* (quoting 28 U.S.C. § 1491(a)(1)).

The Tucker Act concurrently "waives the Government's sovereign immunity for those actions." *Id.* The statute does not, however, create a substantive cause of action or right to recover money damages in the Court of Federal Claims. *Id.* (citing *United States v. Mitchell,* 463 U.S. 206, 216, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983), and *United States v. Testan,* 424 U.S. 392, 398, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976)).

■ Instead, "to come within the jurisdictional reach and the waiver of the Tucker Act, a plaintiff must identify a separate source of substantive law that creates the right to money damages." *Id.* In other words, the source must be money-mandating, in that it " 'can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained.' " *Testan,* 424 U.S. at 400, 96 S.Ct. 948 (quoting *Eastport S.S. Corp. v. United States,* 178 Ct.Cl. 599, 372 F.2d 1002, 1009 (1967) and citing *Mosca v. United States,* 189 Ct.Cl. 283, 417 F.2d 1382, 1386 (1969)). If the provision relied upon is found to be money-mandating, the plaintiff need not rely upon a waiver of sovereign immunity beyond the Tucker Act. *Huston v. United States,* 956 F.2d 259, 261 (Fed.Cir.1992) (citing *Mitchell,* 463 U.S. at 218, 103 S.Ct. 2961).

### II. Standard of Review for a Motion to Dismiss for Lack of Jurisdiction

■ In rendering a decision on a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), this court must presume all undisputed factual allegations to be true and construe all reasonable inferences in favor of the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *abrogated on other grounds by Harlow v. Fitzgerald,* 457 U.S. 800, 814–15, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Reynolds v. Army & Air Force Exch. Serv.,* 846 F.2d 746, 747 (Fed.Cir.1988). However, plaintiff bears the burden of establishing subject matter jurisdiction, *Alder Terrace, Inc. v. United States,* 161 F.3d 1372, 1377 (Fed.Cir.1998) (citing *McNutt v. Gen. Motors Acceptance Corp. of Ind.,* 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936)),

and must do so by a preponderance of the evidence, *Reynolds,* 846 F.2d at 748. If jurisdiction is found to be lacking, this court must dismiss the action. RCFC 12(h)(3).

### III. Standard of Review for a Motion Filed under RCFC 12(b)(6)

■■ Defendant also asks that the complaint be dismissed for failure to state a claim upon which relief can be granted, a request which is governed by RCFC 12(b)(6). *White & Case LLP v. United States,* 67 Fed.Cl. 164, 168 (2005). It is well-settled that a complaint should be dismissed under RCFC 12(b)(6) "when the facts asserted by the claimant do not entitle him to a legal remedy." *Lindsay v. United States,* 295 F.3d 1252, 1257 (Fed.Cir.2002). When considering a motion to dismiss under this rule, "the allegations of the complaint should be construed favorably to the pleader." *Scheuer,* 416 U.S. at 236, 94 S.Ct. 1683. "To state a claim, the complaint must allege facts 'plausibly suggesting (not merely consistent with)' a showing of entitlement to relief." *Cary v. United States,* 552 F.3d 1373, 1376 (Fed.Cir.2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 557, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

### IV. Analysis

#### A. Jurisdiction

■ The Prevailing Rate Systems Act (PRSA), 5 U.S.C. §§ 5341–5349 (2006), is a money-mandating source of law which supports plaintiffs' back pay claim in this court under the Tucker Act.[3] *See, e.g., Bosco v. United States,* 931 F.2d 879, 882 (Fed.Cir. 1991) (citing *Arnell v. United States,* 384 U.S. 158, 159, 86 S.Ct. 1384, 16 L.Ed.2d 445 (1966); *Bradley v. United States,* 870 F.2d 1578, 1580 (Fed.Cir.1989); *Adams v. United States,* 810 F.2d 1142, 1143–44 (Fed.Cir. 1987)); *Turner v. United States,* 44 Fed.Cl. 588, 592 (1999) (citing 28 U.S.C. § 1491 and *Bosco,* 931 F.2d at 882); *Best v. United States,* 14 Cl.Ct. 720, 723 (1988) (*Best II*) (citation omitted); *Best v. United States,* 10 Cl.Ct. 213, 216 (1986) (*Best I*) (citing *Arnell,*

384 U.S. at 163, 86 S.Ct. 1384). Defendant concedes that the PRSA is a money-mandating statute. Def.'s Mot. at 19. Defendant nonetheless musters two jurisdictional challenges to the complaint. Defendant asserts that any and all of plaintiffs' monetary claims are barred by this court's statute of limitations, 28 U.S.C. § 2501 (2006), and that plaintiffs' request for a declaratory judgment does not fall within this court's limited power to provide equitable relief, 28 U.S.C. § 1491(a)(2).

It is beyond cavil that the "statute of limitations applicable to Tucker Act claims, 28 U.S.C. § 2501, is jurisdictional." *Young v. United States,* 529 F.3d 1380, 1384 (Fed.Cir. 2008) (citing *John R. Sand & Gravel Co. v. United States,* 552 U.S. 130, 128 S.Ct. 750, 753–57, 169 L.Ed.2d 591 (2008)). A plaintiff's request for declaratory relief from this court may also pose a jurisdictional issue. *United States v. King,* 395 U.S. 1, 3, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969) ("This [declaration of rights sought by plaintiff] is essentially equitable relief of a kind that the Court of Claims has held throughout its history, up to the time this present case was decided, that it does not have the power to grant."); *James v. Caldera,* 159 F.3d 573, 580 (Fed.Cir.1998) ("[T]he Court of Federal Claims has no power 'to grant affirmative non-monetary relief unless it is tied and subordinate to a money judgment.'" (quoting *Austin v. United States,* 206 Ct.Cl. 719, 723 (1975))); *Voge v. United States,* 844 F.2d 776, 781 (Fed.Cir. 1988) (noting that this court's equitable powers do not extend to issues "entirely unrelated" to a monetary award); *Adams v. United States,* 20 Cl.Ct. 542, 543 n. 2 (1990) ("This court has no jurisdiction to grant injunctive or declaratory relief, . . . except as conferred by statute.") (citations omitted). This court has nonetheless had occasion to address requests for equitable relief under both RCFC 12(b)(6) and RCFC 12(b)(1). *Compare Greenhill v. United States,* 81 Fed.Cl. 786, 792 (2008) (refusing, until a monetary damages claim had been resolved, to grant a RCFC 12(b)(6) motion challenging a request

---

**3.** For questions of jurisdiction and the Tucker Act, "this court" may refer to any of the following: the Court of Claims, the United States Claims Court and the United States Court of Federal Claims.

for equitable relief) *and Lechliter v. United States*, 70 Fed.Cl. 536, 545 (2006) (granting, in a case where this court possessed jurisdiction to entertain the plaintiff's other claims, a RCFC 12(b)(6) motion to dismiss the plaintiff's request for a declaratory judgment) *with Pryor v. United States*, 85 Fed.Cl. 97, 103, 105 (2008) (dismissing the plaintiff's claim for declaratory relief for lack of subject matter jurisdiction pursuant to RCFC 12(b)(1)) *and Sutton v. United States*, 65 Fed.Cl. 800, 804 (2005) (dismissing a claim for equitable relief for lack of subject matter jurisdiction pursuant to RCFC 12(b)(1)). Although precedent is somewhat mixed on this issue, the court believes that RCFC 12(b)(1) is the appropriate vehicle for considering a motion to dismiss a plaintiff's request for a declaratory judgment or other equitable relief. *See Flowers v. United States*, 80 Fed. Cl. 201, 223 (2008) (stating that "the court cannot consider plaintiff's [request for equitable relief], as it lacks jurisdiction," and dismissing such requests for equitable relief pursuant to RCFC 12(b)(1)), *aff'd*, 321 Fed. Appx. 928 (Fed.Cir.2008), *reh'g and reh'g en banc denied*, (Fed.Cir. Feb. 4, 2009).

### 1. Statute of Limitations

Plaintiffs filed suit in this court on September 24, 2008. Defendant contends that plaintiffs' back pay claim is barred by § 2501's six-year limitations' period. Def.'s Mot. at 12–13; Def.'s Reply at 3–8. Although the complaint is silent as to the years of back pay sought in this suit, plaintiffs have clarified in their opposition brief that they seek "back pay for the six year period prior to the filing of the complaint." Pls.' Opp. at 1. The dispositive issue before the court is thus whether plaintiffs' back pay claim accrued before September 24, 2002.

■ It is well established that claims before this court will be barred if they are not filed within the six-year statute of limitations. 28 U.S.C. § 2501; *Ingrum v. United States*, 560 F.3d 1311, 1314 (Fed.Cir.2009) (citing 28 U.S.C. § 2501). The general rule is that "[a] claim first accrues when all the events have occurred that fix the alleged liability of the government and entitle the claimant to institute an action." *Ingrum*, 560 F.3d at 1314.

Defendant asserts that plaintiffs' pay claims accrued long before September 24, 2002, perhaps in 1968, when McKean County was first determined to be in the Pittsburgh local wage area. Def.'s Mot. at 12–13. Defendant also asserts that each of the plaintiffs in this case worked at the federal prison in McKean County for more than six years prior to the filing of the complaint in this court, and that the allegedly erroneous local wage area determination was first applied to their pay before September 24, 2002. Def.'s Reply at 3–5. Thus, defendant suggests that the accrual dates for all of these plaintiffs' pay claims fall outside of this court's six-year statute of limitations. *Id.* at 4 ("Plaintiffs' claims may have accrued, at the latest, when each plaintiff became employed in McKean County and as part of the Pittsburgh wage area.").

■ As plaintiffs point out, however, the accrual of pay claims for federal workers may sometimes be determined not by the general rule associating claims accrual with a single landmark event, but by the "continuing claims" doctrine. Pls.' Opp. at 12 (citing cases). When the "continuing claims" doctrine applies, a new and independent claim accrues each time a plaintiff is paid his salary in an amount which is alleged to be less than what was required by statute or regulation. *See, e.g., Wells v. United States*, 420 F.3d 1343, 1345–47 (Fed.Cir.2005) (citing *Brown Park Estates–Fairfield Dev. Co. v. United States*, 127 F.3d 1449, 1456–57 (Fed.Cir. 1997)); *Beebe v. United States*, 226 Ct.Cl. 308, 640 F.2d 1283, 1293 (1981) (holding that the "plaintiffs' claims are continuing claims and that a separate cause of action accrued each payday when the [agency] excluded the overtime compensation they claim in this suit"); *Baka v. United States*, 74 Fed.Cl. 692, 695–97 & nn. 4–5 (2006) (discussing the continuing claims doctrine and citing relevant cases). The effect of this doctrine on such pay claims before this court is that "periodic pay claims arising more than six years prior to suit are barred, but not those arising within the six-year span even though the administrative refusal to pay the sum claimed may have occurred, or the statute on which the claim is grounded may have been

enacted, prior to six years." *Friedman v. United States*, 159 Ct.Cl. 1, 310 F.2d 381, 384 (1962).

■ As this court has observed, "the test for distinguishing continuing claims from single-event claims may not admit of easy or consistent application." *Baka*, 74 Fed.Cl. at 696 (footnote omitted). The test, stated most simply, is that " 'the plaintiff's claim must be inherently susceptible to being broken down into a series of independent and distinct events or wrongs, each having its own associated damages.' " *Wells*, 420 F.3d at 1345 (quoting *Brown Park Estates*, 127 F.3d at 1456). A continuing claim must, however, be distinguished from "a claim based upon a single distinct event, which may have continued ill effects later on." *Id.*

■ Fortunately, the most far-flung contours of the continuing claims doctrine are not implicated in this case. Here, plaintiffs allege a regular and periodic shortfall in their compensation in violation of a statute. This type of pay claim has consistently been found to fall within the ambit of the continuing claims doctrine. *See, e.g., Friedman*, 310 F.2d at 384 (describing the continuing claims doctrine as applicable to "suits for additional pay at a higher grade, or *claiming greater compensation (under a statute or regulation)* than the claimant was receiving, or

seeking special statutory increments or allowances, etc.") (emphasis added); *Baka*, 74 Fed.Cl. at 696 n. 5 ("Cases in which a plaintiff undisputedly is entitled to *some* pay more plainly fall into the continuing claims category."); *see also Burich v. United States*, 177 Ct.Cl. 139, 366 F.2d 984, 986 (1966) ("This court has long adhered to the view that a suit for compensation due and payable periodically is, by its very nature, a 'continuing claim' which involves multiple causes of action, each arising at the time the Government fails to make the payment alleged to be due.") (citations omitted). Because the continuing claims doctrine has consistently been applied to pay claims based on allegations of periodic violations of a pay statute, the court finds no reason in the suit before it to deny plaintiffs the benefits of the doctrine.[4] *See, e.g., Corrigan v. United States*, 70 Fed.Cl. 665, 671 (2006) ("The continuing claims doctrine permits [a] plaintiff to assert a new claim each time ... compensation [mandated by a statute] was excluded from his paycheck." (citing *Beebe*, 640 F.2d at 1293)).

Plaintiffs have alleged that the pay they received from September 24, 2002 to September 24, 2008 violated both the PRSA and its implementing regulations. Pls.' Opp. at 15–19. The court finds that plaintiffs' claims accrued as continuing claims from September 24, 2002 through September 24, 2008.[5] The

---

4. As discussed *infra* note 9, the court has not been apprised of any statute, regulation or precedent which has established a requirement that plaintiffs exhaust administrative remedies before bringing suit in this court alleging that an erroneous wage area determination has denied them pay required by the PRSA. Administrative adjudication of pay claims may affect the availability of the continuing claims doctrine for this court's determination of the accrual date of a pay claim. *See Hatter v. United States*, 203 F.3d 795, 798 (Fed.Cir.2000) (distinguishing continuing claims from claims accruing upon the occurrence of a single event, at least in part on the basis of whether the claims were independent of or dependent on administrative adjudication (citing *Friedman*, 310 F.2d at 387, 396)), *aff'd in part and rev'd in part on other grounds*, 532 U.S. 557, 121 S.Ct. 1782, 149 L.Ed.2d 820 (2001).

5. Defendant argues that the continuing claims doctrine does not apply in these circumstances. First, defendant attempts to distinguish this case from the precedential pay cases setting forth the continuing claims doctrine. Def.'s Reply at 5–6. The claims in this case are indistinguishable, for

accrual purposes, from other types of pay claims. Second, defendant suggests that a single event, before September 24, 2002, provides the accrual date for each of plaintiffs' claims, and that these claims are thus time-barred. *Id.* at 6–8. Defendant's stance on this issue is essentially the position taken by the dissenting judge in *Wells*, and thus must not be followed by this court. *See Wells*, 420 F.3d at 1348 (Lourie, J., dissenting) ("In my opinion, the Court of Federal Claims was correct in holding that one event—the 1994 decision by the Defense Department to deduct part of Wells' incarceration costs—occurred and caused all of the deductions from his retirement pay. Thus, since that event occurred more than six years before suit was filed in that court, 28 U.S.C. § 2501 bars any recovery for Wells."). The majority in *Wells* held otherwise. Even though one administrative decision, occurring more than six years before Mr. Wells filed suit in this court, caused monthly deductions from his retirement pay, it was the regular and periodic shortfall in his retirement pay which, under the continuing claims doctrine, gave rise to a new and independent pay claim each month. *Id.* at

court need not reach plaintiffs' alternative arguments concerning the accrual of their pay claims, *id.* at 13, or defendant's rebuttal of these arguments, Def.'s Reply at 8–10. Defendant's 12(b)(1) motion is denied, in part, as to the application of 28 U.S.C. § 2501, because plaintiffs' back pay claims are timely under the continuing claims doctrine.

## 2. Declaratory Relief

■ Defendant argues that this court lacks jurisdiction over plaintiffs' request for declaratory relief. Def.'s Mot. at 13–16; Def.'s Reply at 10–12. This jurisdictional challenge takes two forms. The more straightforward argument is that this court may not issue a declaratory judgment, except in limited circumstances not present in the instant case. Def.'s Mot. at 13–14 & n. 10; Def.'s Reply at 11–12 & n. 6. With this argument the court agrees. Paragraph one of plaintiffs' prayer for relief, "Declare that plaintiffs should be included in the Buffalo, New York, wage area," asks for relief which is not within this court's jurisdiction, because the requested declaration is not incidental or collateral relief authorized by 28 U.S.C. § 1491(a)(2).

■ The typical types of declaratory or equitable relief that are collateral to a monetary award are enumerated in the statute:

To provide an entire remedy and to complete the relief afforded by the judgment, the court may, as an incident of and collateral to any such judgment, issue orders directing restoration to office or position, placement in appropriate duty or retirement status, and correction of applicable records, and such orders may be issued to any appropriate official of the United States.

28 U.S.C. § 1491(a)(2). Here, the monetary award sought is for "back pay for the six

year period prior to the filing of the complaint." [6] Pls.' Opp. at 1. There is no conceivable reason to supplement an award of back pay for these six years with a declaratory judgment of the nature requested by plaintiffs.[7] *See Voge v. United States,* 844 F.2d 776, 781 (Fed.Cir.1988) (noting that this court should not provide equitable relief when there is "no reason" for that relief). Money damages would provide a full and complete remedy for the alleged violation of the PRSA and its implementing regulations. *See* Pls.' Opp. at 14 ("This case is in essence a claim for back pay."). The court grants defendant's 12(b)(1) motion, in part, as to the declaratory relief sought in the complaint, because plaintiffs' request for a declaratory judgment is not within the jurisdiction of this court.

■ Defendant, however, reaches too far with its second jurisdictional challenge. In defendant's view, plaintiffs' lawsuit first presents a request for a declaratory judgment, and only a contingent claim for back pay. *See* Def.'s Mot. at 15 ("Plaintiffs' claims for declaratory relief are, therefore, not 'subordinate to a money judgment,' but rather a necessary predicate to any money judgment."). Thus, defendant argues, plaintiffs do not seek "presently due" money damages, and jurisdiction is defeated in this court. Def.'s Reply at 12 (citing *Todd v. United States,* 386 F.3d 1091, 1095 (Fed.Cir.2004)). This is an intriguing jurisdictional argument, in essence stating that a separate request for declaratory relief destroys this court's power to award back pay under a money-mandating statute. The court disagrees with defendant's characterization of this suit and precedent in this circuit.

This court must necessarily decide the rights of a plaintiff before awarding a monetary judgment in a suit for back pay; the court's declaration of rights in such a dispute,

1347 (stating that "each time the money was withheld from Wells' retirement pay the statute limiting [such a withholding] amount was violated, thereby giving rise to a distinct claim").

**6.** Back pay is defined by the complaint as "loss of pay, allowances and differentials" resulting from the allegedly "erroneous" local wage area designation. Compl. at 6.

**7.** In addition to the superfluous nature of plaintiffs' request, the court notes that this request is now largely moot, in that OPM has reclassified McKean County "from the Pittsburgh wage area to the Buffalo wage area [as of] January 14, 2009." Def.'s Reply at 17.

however, does not exceed this court's jurisdiction, because no *ultra vires* declaratory judgment or equitable relief is thereby granted. *See Pauley Petroleum Inc. v. United States,* 219 Ct.Cl. 24, 591 F.2d 1308, 1315 (Ct.Cl.1979) ("As we recognized in *Gentry v. United States,* 546 F.2d 343, 212 Ct.Cl. 1 (1976), merely because the court must make a ruling of law (in *Gentry,* declaring a statutory provision unconstitutional) in order to arrive at a money judgment does not render this court's decision a 'declaratory judgment' banned under *King.*" (citing *United States v. King,* 395 U.S. 1, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969))). Although plaintiffs have included in their complaint a request for a declaratory judgment over which this court lacks jurisdiction, their claim for back pay, which necessarily requires a determination of plaintiffs' rights under the PRSA, does not require a predicate declaratory judgment and is therefore within this court's jurisdiction. *See Bosco,* 931 F.2d at 882; *Turner,* 44 Fed. Cl. at 592; *see also Sutton v. United States,* 65 Fed.Cl. 800, 804 (2005) ("The Court may possess subject matter jurisdiction to entertain one request for relief in a complaint, and yet lack subject matter jurisdiction to entertain a different request for relief in the same complaint." (citing *Voge,* 844 F.2d at 781)). Although defendant would have it otherwise, plaintiffs' request for declaratory relief does not doom their back pay claim. *See Pauley Petroleum,* 591 F.2d at 1314–15 (upholding jurisdiction under the Tucker Act because the "plaintiffs explicitly seek a monetary remedy," despite other language in the complaint in that suit which could have been construed to constitute a request for a declaratory judgment).

Plaintiffs have asserted that their "case is in essence a claim for back pay." Pls.' Opp. at 14. The court agrees. Notwithstanding the request for declaratory relief, their suit primarily seeks money damages, and falls within this court's jurisdiction. *See Bosco,* 931 F.2d at 882; *Turner,* 44 Fed.Cl. at 592; *see also Doe v. United States,* 372 F.3d 1308, 1313 (Fed.Cir.2004) ("[W]e have held that the fact that the plaintiff has framed its complaint as a request for an injunction or a declaratory judgment as opposed to a request for damages does not require that the

case be treated as arising [other than] under . . . the Tucker Act.") (citations omitted). Although plaintiffs' prayer for relief may have been awkwardly phrased, their back pay claims are clearly within this court's jurisdiction. *See Doe,* 372 F.3d at 1314 ("What matters is whether the request for relief is, on its face or in substance, a request for money damages as opposed to equitable relief."); *Katz v. Cisneros,* 16 F.3d 1204, 1207 (Fed.Cir.1994) ("Regardless of the characterization of the case ascribed by [a plaintiff] in its complaint, we look to the true nature of the action in determining the existence or not of jurisdiction.") (citations omitted).

Defendant's reliance on *Todd* for its jurisdictional challenge is misplaced. In *Todd,* the federal employees relied on a collective bargaining agreement as a contractual foundation for their pay claims, arguing that the government had failed to reclassify their place of employment and to pay them the wages commensurate with that reclassification. 386 F.3d at 1094 ("Appellants essentially seek to use the [collective bargaining agreement] as leverage to obtain a reclassification of [their] facility."). The Federal Circuit first noted that Tucker Act jurisdiction did not lie because the *Todd* employees were not party to the collective bargaining agreement, that federal employees cannot base pay claims on contractual rights, as opposed to statutory rights, and that exclusive grievance procedures barred the *Todd* employees from suing in the Court of Federal Claims. *Id.* Even assuming that the employees could have overcome these jurisdictional obstacles, the Federal Circuit held that they could not assert a claim for "presently due" money damages, because the equitable relief of a court-ordered facility reclassification was a necessary prerequisite for their pay claim. *Id.* at 1093–95 & n. 1 (extensively citing and relying upon *United States v. Testan,* 424 U.S. 392, 393–94, 398, 402, 406–08, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976)).

In this case, plaintiffs rely on a money-mandating statute for their pay claims. As the Federal Circuit has noted, the jurisdictional analysis is fundamentally altered when a money-mandating statute is alleged in sup-

port of a pay claim in this court, and *Testan* does not erect a bar to such a claim:

> [When] a money-mandating statute [is alleged in support of a claim], the general rule "that one is not entitled to the benefit of a position until he has been duly appointed to it," [*Testan*, 424 U.S. at 402, 96 S.Ct. 948], is inapplicable.

*Dysart v. United States*, 369 F.3d 1303, 1315 (2004). Thus, the Federal Circuit has clearly distinguished cases brought under money-mandating statutes, and those brought under statutes that are not money-mandating. *See id.* at 1315 n. 9 (distinguishing the statute at issue in *Testan*, 424 U.S. at 399–400, 402, 96 S.Ct. 948, which was not money-mandating, from the statute at issue in *Dysart*, which was money-mandating).

Plaintiffs here claim that under the PRSA and its implementing regulations, they are due back pay. This claim, founded on a money-mandating statute, is clearly within this court's jurisdiction, and is not barred by the rule announced in *Testan*. In *Todd*, even if other jurisdictional barriers could have been overcome, those employees did not rely on a money-mandating statute for their pay claims, and *Testan* would have barred their claims in this court. 386 F.3d at 1094–95. *Todd* is thus inapposite to the jurisdictional inquiry in this case. For these reasons, defendant's 12(b)(1) motion is denied, in part, because plaintiffs' claims for back pay are within the jurisdiction of this court.

## B. Failure to State a Claim upon which Relief May Be Granted

Defendant also seeks dismissal of plaintiffs' back pay claims pursuant to RCFC 12(b)(6). To this end, defendant makes the general assertion that the PRSA is not money-mandating as to the particular claims brought by these plaintiffs. *See* Def.'s Mot. at 17 (citing *Adair v. United States*, 497 F.3d 1244 (Fed.Cir.2007) and *Doe v. United States*, 463 F.3d 1314 (Fed.Cir.2006)). In other words, defendant contends that plaintiffs should "lose on the merits [because they

are not among] the persons entitled to pay under the statute or regulation[s]." *Doe*, 463 F.3d at 1324 (citing *Fisher*, 402 F.3d at 1176). Defendant presents several specific arguments, which the court addresses in turn.

### 1. Allegations of Erroneous PRSA Local Wage Area Designations Present Valid Claims[8]

 Defendant asserts that plaintiffs have failed to allege a violation of the PRSA. In support of this argument, defendant states that plaintiffs have been correctly paid for the Pittsburgh wage area, and cannot assert a violation of the PRSA until they have been reclassified as working in the Buffalo wage area. *See* Def.'s Mot. at 18 (arguing that "plaintiffs do not allege that they failed to receive pay in accordance with the prevailing rates [for Pittsburgh] for their position[s]"); Def.'s Reply at 13 ("Plaintiffs do not state a valid claim under the PRSA when they seek back pay as a result of a wage area reclassification not yet issued."). According to defendant, because that wage area reclassification did not occur during the relevant years for which back pay is at issue, no PRSA violation can possibly have been alleged by plaintiffs in their back pay claim. Defendant states that "plaintiffs do not allege any underlying entitlement to money damages," and that "plaintiffs do not state a valid claim under the PRSA when they seek back pay as a result of a wage area reclassification not yet issued." Def.'s Mot. at 18. In other words, defendant's view of the law is that until the government changes a PRSA local wage area designation, no plaintiff has a valid claim in this court for higher pay under an erroneous wage area designation theory. For this argument, defendant relies on *Averi v. United States*, 23 Cl.Ct. 127, 132–33 (1991), *Anderson v. United States*, 764 F.2d 849, 852 (Fed.Cir.1985), and *Todd*, all of which are distinguishable from the instant case.

In *Averi*, the United States Claims Court considered whether the PRSA was money-mandating for a particular back pay claim

---

8. Several terms might be used to describe the OPM action which assigns a county such as McKean County, Pennsylvania, to a particular local wage area, such as Pittsburgh or Buffalo.

These terms include definition, placement, designation, determination, and classification. The court uses such terms interchangeably in this opinion.

before it. 23 Cl.Ct. at 132–33. The court noted that binding Court of Claims precedent held that section 5343 of the PRSA is money-mandating. *See Averi,* 23 Cl.Ct. at 132 (noting that the PRSA "vests the Claims Court with jurisdiction to determine whether money to which [plaintiffs] were lawfully entitled was wrongfully withheld from them" (citing *Bradley,* 870 F.2d at 1578)). The court described the back pay claim before it as a "claim that OPM abused its discretion by *not establishing a special pay plan* to relieve the pay inversion problems" causing the plaintiffs to be paid little more, and sometimes less, than their supervisees. *Id.* at 132–33 (emphasis added). The Claims Court held that it had no power to review certain actions of OPM, such as a failure to establish a special pay plan, "when no underlying entitlement to money damages exists." *Id.* at 133. Thus, the *Averi* court's holding specifically addresses this court's jurisdiction to review the failure of OPM to establish a special pay plan under the PRSA and implementing regulations. Even if the *Averi* decision were binding precedent on this court, which it is not, *Averi* does not suggest that this court lacks power to review the government's failure to designate the appropriate local wage area for a particular county.

The *Averi* court distinguished the back pay claim before it from those cases involving "an administrative wage-setting process such as determining what the prevailing rate should be for a particular group of employees." *Id.* at 134. One flaw with the *Averi* plaintiffs' assertion of their right to a special pay plan, a pay system authorized under the PRSA when needed for recruitment and retention purposes, was that "the regulations authorizing OPM to establish special plans are not money-mandating." *Id.* Because the *Averi* case is distinguishable both on the facts and applicable statutes and regulations, the court finds defendant's reliance on various pronouncements in the *Averi* opinion to be unpersuasive.

Defendant cites *Anderson* for its statement that an "employee cannot judicially be reappointed, promoted, or reclassified in order to be placed within the reach of" a money-mandating statute. 764 F.2d at 852.

The court notes first that plaintiffs in this case are already within the reach of a money-mandating statute. In addition, none of the statutory sections discussed in *Anderson* were part of the PRSA, or involved local wage areas. The claims in *Anderson* were brought by temporary or intermittent federal employees who sought damages for being denied leave, health and insurance benefits. *Id.* at 850–51. Their claims were dismissed for lack of jurisdiction in this court, and the Federal Circuit agreed that the statutes these plaintiffs relied upon were not money-mandating as to their claims. *Id.* at 850, 852. This court cannot read *Anderson* as providing any guidance as to the validity of a back pay claim based on an allegedly erroneous wage area designation under the PRSA, which is undisputably a money-mandating statute.

Defendant's reference to *Todd* is similarly inapposite. Def.'s Reply at 14 (citing *Todd,* 386 F.3d at 1095). The principle, briefly noted in *Todd* and *Anderson,* forbidding the judicial reclassification of federal employees is perfectly apt when discussing claims not founded upon a money-mandating statute, but has no applicability in this case. *See supra* discussion of *Testan, Todd* and *Dysart.* Defendant again attempts to defeat plaintiffs' claims by raising the specter of impermissible "reclassification," but *Anderson* and *Todd* discuss an entirely different type of reclassification, one in which a plaintiff attempts to leverage a claim on a source of rights which is not money-mandating against the United States under the Tucker Act. *See Todd,* 386 F.3d at 1094 ("Appellants essentially seek to use the [collective bargaining agreement] as leverage to obtain a reclassification of [their] facility."); *Anderson,* 764 F.2d at 852 ("The issue here is not whether appellant employees were properly appointed as temporary or intermittent employees but whether, assuming such designations were erroneous, there is any statute mandating payment of damages as a result of [the government's] failure to allow them to participate in the federal employees health benefits and life insurance programs or to accrue and use annual and sick leave. There is no such statute."). These cases do not compel the conclusion

that plaintiffs in this case do not have a valid claim under the PRSA.

Indeed, this court and its predecessor court have twice treated claims based on allegedly erroneous local wage area designations as valid claims under the PRSA. First, in *Best II*, the plaintiffs alleged that "OPM[ ] acted arbitrarily or capriciously in establishing the boundaries of the wage area in which they [we]re employed" and committed other errors in determining the prevailing rates in that wage area. 14 Cl.Ct. at 723. The court proceeded to rule on the merits of these plaintiffs' claims, concluding that the government's actions in setting the prevailing rates were neither arbitrary nor capricious. *Id.* at 728. Similarly, in *Turner*, the plaintiffs presented two distinct claims related to wage area designations. 44 Fed.Cl. at 589. Each of the claims alleged that the government's definition of a local wage area was incorrect, and that a different, higher-paying local wage area should have been designated for a particular locale or locales. *Id.* The court considered these two claims on the merits. *Id.* at 593–97. The government's wage area designation at issue in one of the claims was sustained as being neither arbitrary nor capricious, but the other claim, based on a different wage area designation, survived summary judgment because of disputes of material fact. *Id.* at 597. *Best II* and *Turner* indicate that a dispute over a wage area designation presents a valid claim under the PRSA for this court's adjudication. A back pay claim based on an allegedly erroneous wage area determination under the PRSA is a claim upon which relief may be granted by this court.[9]

9. Defendant asserts that there is no evidence that the union representing plaintiffs challenged the McKean County wage area designation before March 2008. Def.'s Mot. at 9; Def.'s Reply at 9 n. 4. Defendant also suggests that plaintiffs could have attended public hearings to lodge objections to their local wage area designation but did not do so. Def.'s Mot. at 19; Def.'s Reply at 9 n. 4. Finally, defendant posits that plaintiffs could have sought a writ of mandamus to change their local wage area to the Buffalo wage area. Def.'s Mot. at 20; Def.'s Reply at 17. These statements by defendant are unaccompanied by any argument that plaintiffs have failed to exhaust a mandatory administrative remedy available to them,

## 2. Plaintiffs Have Identified a Specific Duty of the PRSA that Has Allegedly Been Violated

Defendant argues that plaintiffs have failed to identify how the PRSA has been violated. Defendant further argues that the PRSA imposes no money-mandating requirement that the federal government conduct "wage area determinations." Def.'s Mot. at 21. Defendant states that "plaintiffs appear to concede" that the PRSA provisions that discuss local wage area determinations are not money-mandating. Def.'s Reply at 14.

Plaintiffs, although not responding in detail to defendant's argument, have repeatedly cited the PRSA in their complaint as the basis for their pay claim. *See* Compl. ¶¶ 6–9. Specific sections of the PRSA have been cited by plaintiffs, including 5 U.S.C. §§ 5341, 5343(a)(1)(A)(i); 5343(c)(6); 5347(e). *See* Compl. ¶¶ 7–9, 18. In the fact section of plaintiffs' opposition brief, plaintiffs outline in detail the statutory framework that governs prevailing rate determinations, wage schedules and local wage area definitions. *See* Pls.' Opp. at 2–3. This section of plaintiffs' brief includes several statements describing the duties imposed by the PRSA on the federal government:

> Under the enabling legislation, the wages of federal blue collar employees were designed to be set relative to prevailing rates for comparable work in the private sector within a local wage area. The local private wage rates were to be determined by wage surveys taken with the cooperation of local private employers. *Best.*
>
> . . . .

and that their pay claim before this court is barred for that reason. Having failed to cite to a statute, regulation or precedent requiring the exhaustion of a particular administrative remedy, defendant has not shown that plaintiffs' back pay claim may not proceed in this court. *See Martinez v. United States*, 333 F.3d 1295, 1305 (Fed. Cir.2003) (*en banc*) (noting that congressional intent, once discerned, must determine whether or not an administrative remedy is mandatory). The parties have not pointed to any authority, and the court has found none, indicating that Congress mandated an administrative process for resolving local wage area erroneous classification claims brought by individual plaintiffs.

5 U.S.C. § 5343(a)(1) provides that OPM shall define the boundaries of individual local wage areas. Specifically, the statute provides:

5 U.S.C. 5343. Prevailing rate determinations; wage schedules; night differentials.

(a) The pay of prevailing rate employees shall be fixed and adjusted from time to time as nearly as is consistent with the public interest in accordance with prevailing rates.... To carry out this subsection—

(1) *the Office of Personnel Management shall define, as appropriate—*

(A) *with respect to prevailing rate employees* other than prevailing rate employees under paragraphs (B) and (C) of section 5342(a)(2) of this title, the boundaries of—

i. *individual local wage areas for prevailing rate employees* having regular wage schedules and rates; and

. . . .

(Emphasis supplied.) PRSA further provides that OPM, by regulation, [ ]shall provide ["]for a continuing program of maintenance and improvement designed to keep the prevailing rate system fully abreast of changing conditions, practices, and techniques both in and out of the Government of the United States." 5 U.S.C. § 5343(c)(6).

Pls.' Opp. at 2–3. These statements identify the portions of the PRSA that plaintiffs believe have been violated in this instance. Plaintiffs argue that "PRSA and 5 C.F.R. § 532.211 are money mandating a[s] to plaintiffs' claims because they mandate that employees in McKean County be paid under the Buffalo wage area." Pls.' Opp. at 17–18. The court finds that plaintiffs have identified the sections of the PRSA that are alleged to be money-mandating as to plaintiffs' back pay claims, and that plaintiffs have not conceded that the PRSA is not money-mandating as to their back pay claims. Additionally, as discussed *supra,* an allegedly erroneous wage area classification gives rise to a valid claim in this court, because the PRSA is a money-mandating statute with regard to such claims.

### 3. The PRSA and its Implementing Regulations Are Not Wholly Discretionary as to Local Wage Area Determinations

■■■ Finally, defendant argues that "although the PRSA is money-mandating, the regulation allegedly violated by the Government is entirely discretionary and does not mandate payment." Def.'s Mot. at 24. According to defendant, "5 C.F.R. § 532.211 affords OPM discretion whether to combine nonsurvey areas, such as McKean County, with survey areas such as Pittsburgh and Buffalo." *Id.* at 22. Defendant asserts that OPM's discretion is unfettered, because of "[t]he repeated use of the word 'may' " in the regulation. *Id.*

Of course, as defendant points out, the use of the word "may" in a regulation or statute governing payments is not dispositive as to whether the government has unfettered discretion to withhold those payments. *See Doe v. United States,* 463 F.3d 1314, 1324 (Fed. Cir.2006) (noting that the word "may" confers a presumption of discretion, but that other factors in the statutory scheme, such as clear standards of payment, specified amounts of payment, and requirements for payment once certain conditions precedent are met, may limit the government's discretion) (citations omitted); *Doe v. United States,* 100 F.3d 1576, 1582 (Fed.Cir.1996) (distinguishing cases where government payments are wholly discretionary, from those where "Congress has indicated that the Government lacks such unbounded discretion," despite the use of the word "may" in the statute); *Trifunovich v. United States,* 196 Ct.Cl. 301, 304–05, 311 (1971) (rejecting argument that a payment to the plaintiff was discretionary, despite regulatory language that stated the payment "may be granted," when the plaintiff had met the requirements for such a payment). Defendant presents this summary of the discretion provided by the implementing regulations of the PRSA: "the Government does not have discretion to pay the prevailing rate to [eligible] employees [other than] in accordance with their designated wage area; the Government does, however, have discretion to combine or not to

combine survey areas with nonsurvey areas." Def.'s Mot. at 23.

Upon a general review of the wage and survey areas defined by OPM for prevailing rate federal employees, survey areas and nonsurvey areas are combined throughout the country, and it is difficult to comprehend how the purpose of the PRSA could be accomplished without these combinations. McKean County, and other nonsurvey areas, appear to be without exception combined with survey areas. The wage area system of combined survey and nonsurvey areas is described by OPM not as a discretionary function, but as the foundation upon which rests the pay system for these employees:

This appendix [to the prevailing rate regulations] lists the wage area definitions for appropriated fund employees. With a few exceptions, each area is defined in terms of county units, independent cities, or, in the New England States, of entire township or city units. Each wage area definition consists of:

(1) *Wage area title.* Wage areas usually carry the title of the principal city in the area. Sometimes, however, the area title reflects a broader geographic area, such as Wyoming or Eastern Tennessee.

(2) *Survey area definition.* Lists each county, independent city, or township in the survey area.

(3) *Area of application definition.* Lists each county, independent city, or township which, in addition to the survey area, is in the area of application.

5 C.F.R. Pt. 532, Subpt. B, App. C. Thus, whether or not the regulation describes the combination of survey and nonsurvey areas into wage areas under the PRSA as an activity the government "may" undertake, the only rational view of this system, and of the congressional intent underlying it, is that OPM must generally combine survey and nonsurvey areas to create local wage areas for these federal employees, and that these combinations are not "entirely discretionary," as defendant would have it.

Defendant, in support of its analysis of PRSA regulations, again argues that "the structure and purpose of the statute do[ ] not support the conclusion that the PRSA or its implementing regulations mandate payment of money to employees, except in accordance with their designated wage area and rate." Def.'s Mot. at 23. This argument has been refuted *supra*—the PRSA and its implementing regulations do not foreclose a challenge to an erroneous wage area definition. The Claims Court and this court have twice entertained such claims. *See Turner,* 44 Fed. Cl. at 593–97; *Best II,* 14 Cl.Ct. at 723, 728. The Federal Circuit has explicitly held that actions of the government alleged to be in contravention of the PRSA may be reviewed by this court, although the congressional grant of administrative discretion is broad. *Adams v. United States,* 810 F.2d 1142, 1143–44 (Fed.Cir.1987) (citations omitted). Similarly, the Ninth Circuit has found that the regulations setting forth the procedures for conducting wage surveys, promulgated to carry out the purposes of the PRSA, are not discretionary to the point of foreclosing judicial review:

Certainly, these statutes and regulations contained limitations on the appellees' discretion-the imposition of such limitations was the intended purpose of the 1972 Amendments to the Prevailing Wage Employees Act. *See National Federation of Federal Employees v. Brown,* 207 U.S.App. D.C. 92, 645 F.2d 1017, 1024 (1981) (the intent of the 1972 amendments "was to 'set standards of direction' that would control administrative practices and constrain executive discretion.")

*Anderson v. Hodel,* 899 F.2d 766, 770 (9th Cir.1990). For all of these reasons, the court finds that the PRSA and its implementing regulations are not wholly discretionary, and that defendant's RCFC 12(b)(6) challenge to this suit fails.

## CONCLUSION

Plaintiffs' back pay claim is within this court's jurisdiction and is a claim upon which relief may be granted. As to further proceedings, the court encourages the parties to consider settlement discussions and alternative dispute resolution.

Accordingly, it is hereby **ORDERED** that:

(1) Defendant's Motion to Dismiss, filed November 21, 2008, is **GRANTED in part** and **DENIED in part;**

(2) Defendant's 12(b)(1) motion is **GRANTED in part,** as to plaintiffs' request for a declaratory judgment;

(3) Defendant's 12(b)(1) motion is **DENIED** in all other respects;

(4) Defendant's 12(b)(6) motion is **DENIED;** and

(5) Defendant shall **FILE** its **ANSWER** to the complaint on or before **June 26, 2009.**